TA OPERATING CORPORATION, Appellant,

v.

SOLAR APPLICATIONS ENGINEERING, INC., Appellee.

No. 04–04–00180–CV.

Court of Appeals of Texas, San Antonio.

Sept. 28, 2005.

Rehearing Overruled Feb. 8, 2006.

---

R. Wes Johnson, William W. Sommers, The Gardner Law Firm, P.C., Sharon E. Callaway, Crofts & Callaway, P.C., San Antonio, for appellant.

Jeff Small, Law Office of Jeff Small, Jonathan Yedor, Elms Harmon & Macchia, L.L.P., San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

In this appeal, we are asked to determine whether the doctrine of substantial performance excuses a contractor's failure to comply with an express condition precedent to final payment that is unrelated to completion of the building. Concluding that it does not, we grant TA Operating Corporation's motion for rehearing. We withdraw our opinion and judgment of March 30, 2005 and issue this opinion and judgment in their place.

### BACKGROUND

TA Operating Corporation, a truck stop travel center company, contracted with Solar Applications Engineering, Inc. to construct a prototype multi-use truck stop in San Antonio for a fixed price of $3,543,233. Solar agreed to begin construction within fourteen days after signing the contract and complete the project within 270 days, in February 2000. Various delays occurred, however, partly due to confusion over the construction plans. Solar had been given an older set of construction plans from September 1998, on which it based its bid and estimated the project completion. TA, however, expected the project to be built from a set of plans that were dated May 1999. The discrepancy was not discovered until June 1999, and created numerous problems because the two sets of plans were substantially different. Numerous change orders were issued throughout the construction process, and the two sets of plans were reconciled in a comprehensive change order that was issued in February 2000.

Through a series of approved change orders, TA extended project completion until May 26, 2000, and received a letter

from Tracey Sutton, Solar's on-site manager, that the project would be substantially complete by May 30, 2000. Both parties agree that the project was not substantially complete until August 11, 2000, the day TA was issued a temporary certificate of occupancy by the City of San Antonio, certifying that the building had passed all major city inspections and was ready for use.

Upon substantial completion, TA sent Solar a "punch list" of items that needed to be finished to complete the building. Solar disputed several items on the list and delivered a response to TA listing the items Solar would correct, and listing the subcontractor responsible for each item. Solar began work on the punch list items and filed a lien affidavit against the project on October 2, 2000 in the amount of $472,392.77. TA understood the lien affidavit to be a request for final payment.

On October 18, 2000, TA sent notice to Solar that Solar was in default for not completing the punch list items, and for failing to keep the project free of liens. TA stated in the letter that Solar was not entitled to final payment until it completed the remainder of the punch list items and provided documentation that liens filed against the project had been paid. TA ultimately sent Solar a letter of termination citing Solar's failure to complete the punch list items as grounds for termination, which Solar accepted on November 13, 2000. In its reply letter, Solar disputed that the termination was for cause. Solar acknowledged at least two items on the punch list had not been completed, and submitted a final application for payment in the amount of $472,148,77, the unpaid retainage.[1] TA refused to make final payment, however, contending that Solar had not complied with section 14.07 of the contract, which expressly made submission of an all-bills-paid affidavit a condition precedent to final payment:

14.07 *Final Payment*

A. *Application for Payment*

1. After CONTRACTOR has, satisfactorily completed all corrections identified during the final inspection and has delivered, in accordance with the Contract Documents, all maintenance and operating instructions, schedules, guarantees, Bonds,

Certificates or other evidence of insurance certificates of inspection, marked-up record documents (as provided in paragraph 6.12), and other documents, CONTRACTOR may make application for final payment following the procedure for progress payments.

If any Subcontractor or Supplier fails to furnish such a release or receipt in full, CONTRACTOR may furnish a Bond or other collateral satisfactory to OWNER to indemnify OWNER against any Lien.

2. **The final Application for Payment shall be accompanied (except as previously delivered) by: i) all documentation called for in Contract Documents, including but not limited to the evidence of insurance; ii) consent of the surety, if any, to final payment; and iii) complete and legally effective releases or waivers (satisfactory to OWNER) of all Lien rights arising out of or Liens filed in connection with the Work.**

Although Solar did not comply with this condition precedent to final payment, Solar sued TA for breach of contract under the theory of substantial performance. At the time of trial, $246,627.82 in liens existed against the project. Solar did not dispute that the liens existed, nor did it dispute

---

1. At the time of trial, the amount of unpaid retainage claimed by Solar was $396,942.00.

that it was contractually obligated to submit an all-bills-paid affidavit as a condition precedent to final payment. TA counterclaimed for breach of contract and requested a judgment against Solar for damages incurred for Solar's failure to complete the project timely, the cost of repairing defective work, and liens filed against the project. The trial judge severed TA's counterclaim for damages related to liens filed against the project by subcontractors[2] and entered judgment for Solar in the amount of $392,000, the amount of consideration remaining on the contract less the cost of remediable defects in the work.

TA raises seven issues on appeal, asserting: 1) the doctrine of substantial performance does not excuse Solar's failure to comply with an express condition precedent to final payment; 2) the trial court erred in applying a common law measure of damages in entering judgment; 3) the trial court erred in submitting a jury question excusing Solar's failure to complete the work timely; 4) the trial court erred in denying TA offset for delay damages, attorney's fees, and outstanding mechanic's liens; 5) the trial court erred in awarding Solar pre-judgment interest under the Property Code; 6) the trial court erred in awarding Solar conditional appellate attorney's fees; and 7) the trial court erred in refusing to submit TA's requested jury question on fraud.

## CONDITION PRECEDENT TO FINAL PAYMENT

■ The first issue we must resolve is whether the doctrine of substantial performance excuses the breach of an express condition precedent to final payment that is unrelated to completion of the building. TA acknowledges that Solar substantially performed its work on the project, but contends its duty to pay was not triggered until Solar pleaded or proved it provided TA with documentation of complete and legally effective releases or waivers of all liens filed against the project. TA argues that Solar's failure to plead or prove that it fulfilled this condition precedent to final payment barred its right to recover final payment. See TEX.R. CIV. P. 54 ("In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred."). TA contends that when the parties have expressly conditioned final payment on submission of an all-bills-paid affidavit, the owner's duty to pay is not triggered until the contractor pleads or proves it complied with the condition precedent.

The issue of whether the doctrine of substantial performance applies in construction contracts when the submission of an all-bills-paid affidavit is an express condition precedent to final payment has not yet been decided by a Texas court.[3] The issue was discussed in a dissenting opinion

2. The severance order provides that any sums recovered by Solar in the main action, other than attorney's fees, will be held in trust for the benefit of the subcontractors' claims.

3. The Fort Worth Court of Appeals was presented with the issue of whether a contractor's failure to comply with the express condition precedent of obtaining a final certificate for payment from the architect precluded the contractor's right to final payment. See *Uhlir v. Golden Triangle Dev. Corp.*, 763 S.W.2d 512, 515 (Tex.App.-Fort Worth 1988, writ denied). In concluding the contractor was entitled to recover under substantial performance despite the contractor's failure to obtain a certificate from the architect, the court of appeals stated, "We find in this case that the issuance of the architect's certificate was merely another method of assuring final completion." *Id.* We find *Uhlir* distinguishable from the facts of this case because TA's requirement of an all-bills-paid affidavit was meant to avoid the potential of being subject to double liability, not a part of the contract related to completing the construction.

by one of our sister courts. *See Beard Family P'ship v. Commercial Indem. Ins. Co.*, 116 S.W.3d 839, 851–58 (Tex.App.-Austin 2003, no pet.) (Puryear, J., dissenting) (reasoning that the condition precedent of submitting an all-bills-paid affidavit needed to be satisfied before the contractor was entitled to final payment, even though substantial performance of the work had occurred). The *Beard* majority declined to address the issue. Relying on the reasoning of *Beard's* dissenting opinion and citing several treatises on contract law as well as opinions from other jurisdictions,[4] TA argues that the doctrine of substantial performance does not excuse the breach of an express condition precedent to final payment. Solar contends that although it did not submit an all-bills-paid affidavit in accordance with the contract, it may still recover under the contract pursuant to the substantial performance doctrine. Solar argues that to hold otherwise would bring back the common law tradition that the only way for a contractor to recover under a contract is full, literal performance of the contract's terms.

■■■ While the common law did at one time require strict compliance with the terms of a contract, this rule has been modified for building or construction contracts by the doctrine of substantial performance. *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex.1990); *Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 481 (Tex.1984); *Atkinson v. Jackson Bros.*, 270 S.W. 848, 850 (Tex.

Comm'n App.1925, holding approved). "Substantial performance" was defined by the Texas Commission of Appeals in *Atkinson*:

> To constitute substantial compliance the contractor must have in good faith intended to comply with the contract, and shall have substantially done so in the sense that the defects are not pervasive, do not constitute a deviation from the general plan contemplated for the work, and are not so essential that the object of the parties in making the contract and its purpose cannot without difficulty, be accomplished by remedying them. Such performance permits only such omissions or deviation from the contract as are inadvertent and unintentional, are not due to bad faith, do not impair the structure as a whole, and are remediable without doing material damage to other parts of the building in tearing down and reconstructing.

*Atkinson*, 270 S.W. at 851. The rule of substantial performance is an equitable doctrine adopted to allow a contractor who has substantially completed a construction contract to sue on the contract rather than being relegated to a cause of action for quantum meruit. *Vance*, 677 S.W.2d at 482. The doctrine of substantial performance recognizes that the contractor has not completed construction, and therefore is in breach of the contract. *Id.* Under the doctrine, however, the owner cannot use the contractor's failure to complete the

---

4. Jurisdictions that have addressed the issue have concluded that where parties contract for literal compliance of the contract, substantial performance does not excuse failure to comply with those express conditions. *See, e.g., Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 636 (7th Cir.1992) (holding that where a party has insisted on strict compliance with the contract's terms, the doctrine of substantial performance does not apply); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 336 (7th Cir.1987) (finding that although the substantial performance rule seems to derive in part from the maxim, "The law abhors a forfeiture," it applies only in the absence of conditions precedent); *Della Ratta, Inc. v. Am. Better Cmty. Developers, Inc.*, 38 Md.App. 119, 380 A.2d 627, 637–38 (1977) (concluding that the doctrine of substantial performance ordinarily applies to constructive conditions precedent and not to express conditions).

work as an excuse for non-payment. *Atkinson,* 270 S.W. at 850. "By reason of this rule a contractor who has in good faith substantially performed a building contract is permitted to sue under the contract, substantial performance being regarded as full performance, so far as a condition precedent to a right to recover thereunder is concerned." *Id.* (citing *Linch v. Paris Lumber & Grain Elevator Co.,* 80 Tex. 23, 15 S.W. 208 (1891) (holding that a contractor who had substantially complied with the building specifications substantially performed)). Substantial performance is regarded as a condition precedent to a contractor's right to bring a lawsuit on the contract. *Id.*

■ Relying on *Uhlir v. Golden Triangle Development Corporation,* Solar argues that by agreeing substantial performance occurred, TA acknowledged that Solar was in "full compliance" with the contract and any express conditions to final payment did not have to be met. 763 S.W.2d 512, 515 (Tex.App.-Fort Worth 1988, writ denied) (holding that "[a] finding that a contract has been substantially completed is the legal equivalent of full compliance, less any offsets for remediable defects"). Solar argues that TA may not expressly provide for substantial performance in its contract and also insist on strict compliance with the conditions precedent to final payment. We disagree. While the substantial performance doctrine permits contractors to sue under the contract, it does not ordinarily excuse the non-occurrence of an express condition precedent:

> The general acceptance of the doctrine of substantial performance does not mean that the parties may not expressly contract for literal performance of the contract terms; however, where the parties have not made it clear that literal and exact compliance is necessary, substantial performance will suffice, especially if requiring literal performance will result in a forfeiture. Thus, substantial performance is ordinarily not applicable to excuse the nonoccurrence of an express condition precedent to a contract. Stated otherwise, if the terms of an agreement make full or strict performance an express condition precedent to recovery, then substantial performance will not be sufficient to enable recovery under the contract.

15 WILLISTON ON CONTRACTS § 44.53 (4th Ed.2000) (citing RESTATEMENT (SECOND) OF CONTRACTS, § 237, cmt. d (1981)). The substantial performance doctrine ordinarily applies to constructive conditions precedent and not to express conditions precedent—substantial performance by the builder is a "constructive condition" of the owner's duty to pay. *See id.; see also* 8 CORBIN ON CONTRACTS § 36.2 (4th Ed.2000) ("But it is not with express conditions or interpretations that we are primarily concerned. We are now dealing with a contract that consists of two exchanged promises requiring the rendition of two promised performances, *without making either promise expressly conditional on anything.* The builder promises to build and the owner promises to pay.") (emphasis added).

TA, seeking protection from double liability and title problems, expressly conditioned final payment on Solar's submission of an all-bills-paid affidavit. Solar did not dispute that it was contractually obligated to submit the affidavit as a condition precedent to final payment, and it was undisputed at trial that $246,627.82 in liens had been filed against the project. Though the doctrine of substantial performance permitted Solar to sue under the contract, Solar did not plead or prove that it complied with the express condition precedent to final payment. Had Solar done so, it would have been proper to award Solar the

contract balance minus the cost of remediable defects. While we recognize the harsh results occasioned from Solar's failure to perform this express condition precedent, we recognize that parties are free to contract as they choose and may protect themselves from liability by requesting literal performance of their conditions for final payment. *See* 8 CORBIN ON CONTRACTS § 36.2 ("Theoretically, at least, people are free to contract as they choose, limiting their rights and duties in ways that are unusual or absurd or unprofitable."). The parties agreed to the conditions for final payment, and Solar did not plead or prove it performed the condition precedent of submitting an all-bills-paid affidavit. We therefore sustain TA's first issue and render judgment that Solar take nothing on its breach of contract claim. Because we sustain TA's first issue, we need not address its fifth and sixth issues.[5] *See* TEX. R.APP. P. 47.1 (stating that opinion need only address issues necessary to final disposition of the appeal).

## SUBMISSION OF JURY INSTRUCTION REGARDING WAIVER

▉▉ In its third issue, TA contends that the trial court erred in submitting a jury question regarding whether Solar's failure to complete the work timely was excused by waiver. The trial court submitted the following question to the jury:

> Was Wade's [a/k/a Solar] failure to complete the Work under the Contract Documents within the time specified by the Contract Documents excused by waiver. Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right. Answer "Yes or "No."

Rule 278 of the Rules of Civil Procedure requires the submission of jury questions that are supported by the pleadings and the evidence. TEX.R. CIV. P. 278. The standard for review of a jury charge is an abuse of discretion. *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). In reviewing a complaint that there was no evidence to support the submission of a question to the jury, an appellate court must look at only the evidence which tends to support the judgment in order to determine if the trial court abused its discretion in submitting the issue. *McFarland v. Sanders*, 932 S.W.2d 640, 644 (Tex.App.-Tyler 1996, no writ). We indulge all inferences in favor of the submission. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla, and is in legal effect, no evidence. *Id.*

The original contract documents called for a completion date of February 22, 2000. At trial, there was testimony and evidence that Solar was given a set of construction plans dated September 1998 on which it based its bid and estimated project completion. According to the contract documents, Solar was obligated to perform according to the September 1998 plans. TA, however, expected the project to be built according to a set of plans dated May 1999. There was evidence that Solar was in possession of the May 1999 plans in June of that year. Solar testified that the existence of two sets of plans caused considerable delay of the project because the plans were extensively different. Robert Rohmer, the operations manager for Solar,

---

**5.** Because we render that Solar take nothing on its breach of contract claim, we need not address whether the trial court erred in awarding Solar pre-judgment interest under the Property Code or whether the trial court erred in awarding Solar conditional appellate attorney's fees.

testified that one major problem was the delay in getting the concrete foundation for the building poured for construction to begin. Because the two sets of plans provided for different dimensions on the plumbing, sanitary, and electrical conduits, the concrete could not be poured until the plans were reconciled. Instead of being poured in June, the concrete foundation was not ready until October.

Between the beginning of construction up until February of 2000, fifty-five change orders were issued to guide Solar as to various aspects of construction. TA acknowledged at trial that until the plans were reconciled in a comprehensive change order in February 2000, Solar was contractually obligated to perform under the September 1998 plans. After the comprehensive change order was issued and the May 1999 plans were incorporated into the project, project completion was extended to May 26, 2000 through a series of mutually agreed-upon change orders. An extra eighty-four days were in dispute, however, due to Solar requesting extra days on change orders for delays it believed were outside its control. TA employees testified that TA did not grant extensions for the requested eighty-four days because it believed the construction requests in the disputed change orders did not affect the critical path of the project, and did not merit extra time. George Strickland, the director of engineering and construction for TA, acknowledged that the contract did not penalize Solar for delays outside its control. Strickland testified that TA was facing financial difficulties in March 2000, and that he went out to the construction site and ordered TA employees not to spend any money outside its budget. The jury heard testimony that Solar's delay requests were being made after Strickland had advised everyone in the field no more money would be spent outside the budget on the project, a time when TA was having

to decide whether Solar's delay requests were for delays outside its control. Throughout trial, Solar contended the delays were due to conditions outside its control.

There was evidence at trial that one hundred and eighteen change orders were issued over the course of the project, TA often took longer than the industry-standard time to approve change orders, TA failed to promptly respond to requests for information, TA interfered with Solar's subcontractors and requested work not covered by the contract documents, TA requested completion of punch list items Solar was not responsible for, and TA failed to provide accurate drawings. The evidence of the two sets of construction plans, which took nine months to reconcile into a comprehensive plan, along with the other evidence recited, raised a fact issue for the jury to decide whether TA was responsible for much of the construction delay, and therefore excused Solar's failure to complete the project timely. There was more than a scintilla of evidence to support the jury's finding. *Kindred,* 650 S.W.2d at 63. Because the issue of waiver was raised by the evidence, it was not error for the trial court to submit question number six to the jury. Thus, we overrule TA's no-evidence attack on the jury's finding to question six. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983).

 Alternatively, TA contends the evidence is insufficient to support the conclusion that Solar's failure to complete the work within the specified time in the contract was excused by waiver, and that the court should therefore have disregarded the jury's answer to the question. When reviewing a challenge to the factual sufficiency of the evidence, we must consider all the evidence in the record. *See Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d

442, 445 (Tex.1989). If a party is attacking the factual sufficiency of an adverse finding when the other party has the burden of proof, that party must demonstrate there is insufficient evidence to support the adverse finding. *Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.*, 48 S.W.3d 225, 236 (Tex.App.-San Antonio 2001, pet. denied). When reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We set aside the verdict only if the evidence is so weak as to make the verdict clearly wrong and manifestly unjust. When the parties introduce conflicting testimony in a jury trial, the jury has the exclusive responsibility to determine the credibility of witnesses and the weight to be given their testimony. *Novosad v. Mid–Century Ins. Co.*, 881 S.W.2d 546, 548 (Tex.App.-San Antonio 1994, no writ). As an appellate court, we must give deference to the jury's resolution of conflicts in the evidence. *See Carr v. Jaffe Aircraft Corp.*, 884 S.W.2d 797, 802–03 (Tex.App.-San Antonio 1994, no writ).

Throughout the trial, each side blamed the other for construction delays, and both put on evidence and testimony to support its position. TA argued that Solar's failure to supervise and coordinate the project properly created delay, and Solar argued the delays occurred due to conditions outside its control. The jury, as the trier of fact, was authorized to resolve conflicts within the testimony of witnesses and evidence, and we will not substitute our judgment for that of the jury. The evidence supporting TA's waiver is not so weak as to be clearly wrong and manifestly unjust. *Cain*, 709 S.W.2d at 176. TA's third issue is overruled. Because we uphold the jury's finding of waiver, we also overrule that portion of TA's fourth issue requesting an offset for delay damages.

## MEASURE OF DAMAGES

■ In its second issue, TA argues the trial court erred in applying a common law measure of damages rather than the parties' contractually agreed upon measure of damages in entering judgment. Whether the trial court applied the improper measure of damages is a question of law subject to a *de novo* review. *Elias v. Mr. Yamaha, Inc.*, 33 S.W.3d 54, 60 (Tex.App.-El Paso 2000, no pet.).

■ Ordinarily, a finding of substantial performance of the contract results in the measure of damages being the cost of remedy or repair. *Vance*, 677 S.W.2d at 481. Citing *Tucker v. Northcutt*, TA contends the trial court was required to apply the parties' contractually agreed upon measure of damages. 248 S.W.2d 750 (Tex.Civ.App.-Waco 1952, writ ref'd). *Tucker* is distinguishable, however, because *Tucker*, and the line of cases that have followed it, held that where *there has not been substantial performance* of a building contract, the proper measure of damages is the measure of damages contractually agreed upon by the parties. *Id.* at 752; *see also Fid. and Deposit Co. v. Stool*, 607 S.W.2d 17, 20–21 (Tex.Civ.App.-Tyler 1980, no writ) (quoting *Tucker*, 248 S.W.2d at 751) ("[T]he correct measure of damages resulting from the breach of a building contract is ordinarily the reasonable cost of remedying the defects ... provided such contract has been 'substantially performed.'"); *Volkman v. Eakman*, 496 S.W.2d 752, 758 (Tex.Civ.App.-Fort Worth 1973, writ ref'd n.r.e.) (holding that the proper measure of damages to repair defects for a building contract that has not been substantially performed is the contractually agreed upon measure of damages). TA conceded that there was substantial performance of the building contract. Therefore, it was proper for the

trial court to apply a common law measure of damages. *Vance*, 677 S.W.2d at 481. TA's second issue is overruled.

■■■ Alternatively, TA requests an offset for mechanic's liens and TA's attorney's fees against the contract balance of $400,000. First, we note that TA's counterclaim with respect to the existence of mechanic's liens against the project was severed by the trial court into a separate civil cause of action. The effect of a severance is to divide a lawsuit into two or more independent suits that will be adjudicated by distinct and separate judgments. *In re E.I. duPont de Nemours & Co.*, 92 S.W.3d 517, 523 (Tex.2002) ("A severed action becomes a different action"). Because the liens were not an issue to be resolved in the trial court, is it not an issue before us on appeal. *See Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex.1985) (noting that Texas appellate courts have jurisdiction only over final judgments). We overrule this portion of TA's argument.

■■■ TA also contends that the trial court erred by denying TA's recovery of attorney's fees. Relying on *McKinley v. Drozd*, TA argues that the $8,000 offset for remediable defects makes it a prevailing party on its counterclaim for breach of contract, and that it is therefore entitled to its attorney's fees. 685 S.W.2d 7, 11 (Tex. 1985) (holding that a party does not need a net recovery to be awarded attorney's fees; all that is required is that the party prevail on a just claim). We disagree. The $8,000 offset for remediable defects was an element Solar was required to prove under its substantial performance cause of action, rather than a successful recovery proven by TA. *See Uhlir*, 763 S.W.2d at 517 (citing *Vance*, 677 S.W.2d at 482–83) (offset under substantial performance theory is not considered a successful counterclaim for the counter-plaintiff). Further, the trial court's judgment specifi-

cally denied TA recovery on its counterclaim. To recover attorney's fees under its breach of contract claim, TA had to prevail on its counterclaim and recover damages. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1997); *McKinley*, 685 S.W.2d at 9–11. A party who is not awarded damages cannot recover attorney's fees. Because TA was not awarded damages under its counterclaim for breach of contract, TA was not entitled to recover attorney's fees. Therefore, the court did not err in refusing to award TA attorney's fees. TA's fourth issue is overruled.

## REQUESTED JURY QUESTION

■■■ In its seventh issue, TA contends that the trial court erred in refusing to submit its requested question regarding whether Solar committed fraud when it represented to TA that it could substantially complete the project by May 30, 2000. Rule 278 of the Texas Rules of Civil Procedure requires the submission of questions that are raised by written pleadings and the evidence. TEX.R. CIV. P. 278. We review a trial court's decision to exclude a jury question under an abuse of discretion standard. *Texas Dep't of Human Servs.*, 802 S.W.2d at 649. When evaluating whether a party is entitled to a jury question, we examine the record for evidence supporting the submission of the question, and ignore evidence to the contrary. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992); *Roy v. Howard–Glendale Funeral Home*, 820 S.W.2d 844, 846 (Tex. App.-Houston [1st Dist.] 1991, writ denied) (the "trial court is obligated to submit the question if the evidence amounts to a more than a scintilla"). Refusal by a judge to submit a question is correct if no evidence exists to warrant the submission of the question. *Id.*

■■■ To prove a fraud cause of action, it must be established that: 1) a material

misrepresentation was made; 2) that was known to be false when made or was asserted without knowledge of its truth; 3) that was intended to be acted upon; 4) that was relied upon; and 5) caused injury to the party who relied on the misrepresentation. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001). TA points to the testimony of Howard Wiatrek and Robert Rohmer, employees of Solar, as evidence supporting fraud. Wiatrek testified that employees of Solar realized at one point in May that the project could not be finished in May, and that in his opinion, the project could not be completed by May 24, 2000. Rohmer testified that he realized at one point in May that the project would not be finished at the end of May. Tracey Sutton also testified that at the beginning of May, Solar believed it could substantially complete the project by the 30th, but due to several requests for information and change orders submitted in mid-May, he realized substantial completion would not be achieved.

To support a jury question on fraud, the record must contain evidence that Solar made the representation with the intent to deceive TA and with no intention of performing as presented. *See Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex.1986) (requiring evidence of fraudulent intent on the part of the promisor when the promise is to perform a future act). Reviewing the record, we do not find evidence that Solar intended to deceive TA and that it did not intend to substantially complete the building by the specified time in the contract documents. We do not find evidence that Solar committed a material misrepresentation. Because the issue of fraud was not raised by the evidence, the trial court did not abuse its discretion in refusing TA's requested jury question. TA's seventh issue is overruled.

## Conclusion

The doctrine of substantial performance permits a contractor to sue on the contract, but it does not ordinarily excuse performance of an express condition precedent to final payment that is unrelated to completion of the building. Because Solar failed to plead or prove it complied with the express condition precedent of submitting an all-bills-paid affidavit to TA, it did not trigger TA's duty to pay. Therefore, the trial court erred in awarding Solar the contract balance of damages, and we render judgment that Solar take nothing on its breach of contract claim. We affirm the trial court's judgment with respect to the amount of damages awarded to TA for remediable defects, the trial court's submission of the jury question regarding waiver, and the trial court's refusal to submit a jury question on fraud.