# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00494-CV

**Stonehill-PRM WC I, L.P., Appellant**

**v.**

**Chasco Constructors, Ltd., L.L.P. and Safeco Insurance Company of America, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-06-002741, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this construction contract dispute, appellant Stonehill-PRM WC I, L.P., ("Stonehill") appeals the district court's judgment in favor of appellees Chasco Constructors, Ltd., L.L.P. ("Chasco") and Safeco Insurance Company of America ("Safeco"). In seven issues, Stonehill contends the district court erred when it determined the measure of damages, when it excluded testimony from two of Stonehill's experts and one of its owners as to the value of the proposed construction, when it excluded evidence of the cost to complete the construction project, and when it refused to admit an alleged copy of the contract between the parties. Because we conclude the district court did not err in its determination of the measure of damages and that any error in the challenged evidentiary rulings was not reversible error, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Project*

In the summer of 2005, Stonehill hired the architectural firm Page Southerland Page Architects and Engineers ("PSP") to design a 156-unit student housing facility (the "Project") for property that Stonehill owned near the University of Texas in Austin, Texas. In approximately September 2005, Stonehill began negotiations with Chasco for Chasco to be the contractor for the Project. The proposed scope of work included demolishing the existing structure on the property. Chasco provided several different budgets to Stonehill including a line-item budget of $16,638,030 in December 2005. The December 2005 budget was based upon design and development drawings that PSP issued in October 2005. PSP also issued permit plans for the Project on February 6, 2006, and an "Addendum #1" to the permit plans in March 2006.

Stonehill and Chasco executed a "Standard Form of Agreement Between Owner and Contractor" dated February 22, 2006 (the "Contract").[1] The Contract provides that Chasco would be paid its costs for performing the work plus a fee with a guaranteed maximum price ("GMP").[2]

---

[1] The standard form, titled "AIA Document A111-1997," is from the American Institute of Architects and reflects the parties' modifications to the standard form. Section 15.1.2 of this document incorporates the standard form "AIA Document A201-1997, as modified" as the agreed "[g]eneral [c]onditions" of the Contract.

[2] Article 5 of the Contract sets forth the "basis for payment." Section 5.2.1, as modified by the parties, states:

> The sum of the Cost of the Work and the Contractor's Fee is guaranteed by the Contractor not to exceed ($ ); (see GMP addendum) subject to additions and deductions by Change Order as provided in the Contract Documents. Such maximum sum is referred to in the Contract Documents as the Guaranteed Maximum Price.

Neither party produced an original of the Contract, and the parties disagree whether the Contract contained a GMP addendum and, if so, whether the GMP addendum actually contained a guaranteed maximum price. Stonehill contends that the Contract contained a GMP addendum with a GMP of $16,638,030, the amount Chasco provided as the budget in December 2005.[3] Chasco contends that, at the time the parties executed the Contract, the Contract did not contain a GMP addendum and Chasco had not completed the bidding process from the permit plans to provide final cost numbers, but that, based on a subsequent request from Stonehill's lender that was financing the Project, two GMP addenda were prepared. According to Chasco, both addenda contained a GMP of $16,638,030 that was not final and a sentence that the GMP "will be modified upon verification of pricing of City of Austin permit plans dated February 6, 2006."[4]

In March 2006, Safeco issued a performance and payment bond on the Project for $16,638,030, and Chasco began the demolition work on the existing structure.[5] On April 4, 2006, Chasco notified Stonehill that construction costs based on the completion of the bidding process from the permit plans were $30,250,000. Thereafter, Chasco sent notice to Stonehill that "[b]ased

[3] The addendum that Stonehill contends was contained in the Contract was titled "West Campus Student Housing" and reflects the date of "December 20, 2005." It is identical to the line-item budget that Chasco provided to Stonehill in December 2005 and does not contain a sentence that the GMP will be modified based on verification of pricing from the permit plans.

[4] Both of these addenda were admitted into evidence. They are identical except one refers to the GMP as the "Initial Guaranteed Maximum Price" and is titled "Initial Guaranteed Maximum Price Addendum to Contract," and the other one refers to the GMP as the "Guaranteed Maximum Price" and is titled "Guaranteed Maximum Price Addendum to Contract."

[5] Chasco submitted applications for payment in March, April, and May for the demolition work that it performed on the existing structure, and Stonehill paid the requested amounts. The dispute does not involve the work that Chasco performed.

upon verification of pricing of the City of Austin permit plans and specifications dated February 6, 2006 and Addendum #1 dated March 9, 2006 along with our Final GMP budget and qualifications dated April 4, 2006," Chasco needed a written change order modifying the initial GMP to the "Final GMP budget" of $30,250,000 to "begin construction of the new structure." Stonehill would not agree to a GMP of $30,250,000, and Chasco did not begin construction.

### *Litigation Commenced*

In May 2006, Stonehill sent written notice to Safeco and Chasco that it was "formally" terminating Chasco's right to complete the Project and declaring a "Contractor Default" as a result of Chasco's failure to perform its obligations, including its failure to comply with performance for the agreed GMP. In July 2006, Stonehill filed this suit alleging breach of the Contract and the performance bond. Attached to Stonehill's original petition was a copy of the Contract that contained the version of the GMP addendum titled "Guaranteed Maximum Price Addendum to Contract." In July 2007, Stonehill filed a second amended petition alleging additional claims and attaching a different copy of the Contract, one that contained the version of the addendum titled "West Campus Student Housing" with the date "December 20, 2005."

In its second amended response to appellees' request for disclosure, Stonehill disclosed that it was seeking its "expectancy damages"—the difference between the value of the Project had it been constructed in accordance with the plans and specifications, "calculated using appropriate rents, expenses and prevailing capitalization rates in Austin, Texas for similar apartment structures," and the costs that Stonehill avoided. Stonehill designated Greg Hallman, Ph.D., as its damages valuation expert, disclosing that he would testify "about the value of the building that is the

4

subject matter of this lawsuit were it constructed pursuant to the parties' Construction Contract."
It was Hallman's opinion that the value of the "resulting building" would have been in excess
of $36,000,000.

After deposing Hallman, Chasco filed a motion to exclude Hallman as Stonehill's
designated expert and his testimony on several grounds including that he was not qualified because
he was not licensed by the Texas Appraiser Licensing and Certification Board ("TALCB") and
because he lacked "sufficient knowledge, skill, experience, training, or education" and that his
testimony was not reliable because his "methodology, assumptions, and processes" were not accurate
and did not comply with industry standards for appraising commercial real estate. Safeco joined
Chasco's motion. After a hearing in September 2007, the district court excluded Hallman.

In September 2007, the district court also granted Safeco's first motion for summary
judgment in part. It granted the motion regarding the "current model of damages sought by
[Stonehill] against Safeco" and found as a matter of law that Stonehill was only entitled to actual
damages under the performance bond, that "[a]ctual damages can include expectancy damages for
the breach of an express contract," and that the "legal measure of damages in this case for such actual
damages cannot include, either directly or indirectly, possible future rental rates, occupancy rates or
similarly speculative income projections."

Stonehill thereafter sought a continuance from the October 2007 trial setting. The
district court conditionally granted Stonehill's motion, continuing the trial setting to February 2008
and extending the parties' deadlines to designate "appraiser/damages experts" and to amend their
pleadings and discovery responses "to conform to the revised damages testimony and

methodology[ies]." Stonehill's new deadline to designate experts was October 15, 2007, and its deadline to amend its pleadings and discovery responses was December 28, 2007.

In its third amended response to request for disclosure that it served on December 28, 2007, Stonehill disclosed that its designated damages expert, Rudy R. Robinson, III, MAI, would testify "about the value of the building that is the subject matter of this lawsuit were it constructed according to the parties' Construction Contract." Stonehill did not amend the measure of damages that it was seeking, continuing to seek its "expectancy damages" based on the difference in value of the proposed building had it been built according to the plans and specifications and the costs that it avoided, but it amended the proposed building's value. In discovery, Stonehill stated that the building "would have a value in the range of $32,000,000 to $37,000,000, calculated using appropriate rents, expenses and prevailing capitalization rates in Austin, Texas for similar apartment structures and commonly understood appraisal methods and techniques for valuation of commercial property." On January 4, 2008, Chasco and Safeco filed a joint motion to exclude Robinson as Stonehill's designated expert and his testimony on several grounds, including that his testimony as to the market value of the proposed building was irrelevant. The district court granted their motion to exclude Robinson on February 8, 2008.

In January 2008, Safeco also filed a second motion for summary judgment based on Stonehill's failure to revise its damages model against Safeco. On February 8, 2008, the district court granted this motion and, because the order disposed of all claims asserted against Safeco, entered judgment dismissing Safeco with prejudice.

On the same day, the district court granted a partial summary judgment in favor of Chasco on the proper measure of damages. The district court ruled:

> The Court declares that if, *and only if*, an enforceable contract exists between the parties:
>
> i)      As a matter of law, the proper measure of [Stonehill's] damages under the alleged contract is the cost to complete construction of the project to the extent the costs of completing the construction of the project exceed those costs which would have been payable to [Chasco];
>
> ii)     As a matter of law, Stonehill's damages may not include any consequential damages, including damages for rental expenses, losses of use, income, profit, financing, and business because they are prohibited by the alleged contract; and
>
> iii)    As a matter of law, [Stonehill] contractually waived the "benefit of the bargain" (a/k/a "expectancy") damages it seeks in this lawsuit.

Meanwhile, on February 4, 2008, Stonehill served its fourth amended response to request for disclosure, disclosing for the first time that it was seeking cost to complete construction as an alternative measure of damages:

> Alternatively, Stonehill will seek damages for the difference between the costs to complete the Work of the Construction Contract and the costs payable to Chasco to complete the Work pursuant to the Construction Contract except for Chasco's default.

Stonehill did not disclose the amount of damages that it was seeking under its alternative measure of damages. Stonehill also amended its response as to Jim Brownlow, one of Stonehill's owners. Stonehill disclosed for the first time that Brownlow had knowledge of "what the construction costs would have been had Chasco performed the Construction Contract and the Facility." Chasco

7

thereafter filed a motion to exclude this evidence for failing to timely respond. Chasco sought the exclusion of evidence of the cost to complete the Project, contending that Stonehill had not timely disclosed this alternative measure of damages in response to appellees' request for disclosure by the revised deadline of December 28, 2007. On February 12, 2008, the district court granted Chasco's motion and excluded Stonehill's fourth amended response to appellees' request for disclosure.

***The Trial***

The jury trial occurred February 12 to 14, 2008. The primary disputed fact was whether the parties contractually had agreed to a GMP of $16,638,000. It was Stonehill's position that the parties had, and Chasco's position that they had not. Stonehill's witnesses included Brownlow; Michael Mace, PSP's senior vice president; and Brian Selbo, the Project's development coordinator for Stonehill. Brownlow testified concerning the background of the Project, communications and negotiations between the parties, and the different GMP addenda. Mace testified concerning PSP's role in the Project, the plans and drawings that PSP issued, and his opinion that Chasco had adequate information based on the October 2005 plans to submit a GMP. Selbo testified to his role with the Project, Stonehill's receipt of three signed copies of the Contract from Chasco, and Stonehill's unsuccessful search to find an original executed contract.

Stonehill also called Curtis Cline, Chasco's corporate representative, and Temple Aday, Chasco's president, as adverse witnesses. Cline testified to the negotiations between Chasco and Stonehill, the various budgets that Chasco prepared, the bidding process, the changes between the design and development plans and the permit plans and the effect of the changes on cost, the GMP addenda, and the final GMP of $30,250,000 that Chasco provided after the bidding process was

8

completed. Aday testified that "it's practice in the construction industry" to attach a GMP addendum at a later date, that "it's customary in the construction field to sign a contract with the price to be determined at a later date," that the contract that he signed on behalf of Chasco did not have "any addendums attached," and that it was his understanding that "the addendum had not been established and would be established at a later date."

Through its witnesses, Stonehill attempted to admit the version of the Contract that contained Chasco's December 2005 budget as the GMP addendum, but the district court sustained Chasco's objections and refused to admit it into evidence. No witness was able to testify to what had happened to the originals or to explain how or by whom the version that Stonehill was seeking to admit was pieced together during the litigation. Stonehill's version of the Contract contained pages that had different Bates numbering identifiers. The district court admitted other versions of the Contract, including the version that was attached to Stonehill's original petition.

After Stonehill rested, Chasco moved for directed verdict on Stonehill's remaining claims for fraudulent inducement and breach of contract. The district court granted the motion, stating that there was no evidence of a "present intention not to perform" as to the fraudulent inducement claim and no evidence of damages as to the breach of contract claim. The district court entered a take-nothing judgment against Stonehill. Stonehill filed a motion for new trial, which motion the district court denied. This appeal followed.

## ANALYSIS

In seven issues, Stonehill challenges the district court's determination of the proper measure of damages and its exclusion of evidence. In its first issue, Stonehill contends that the

district court erred in ruling that Stonehill's measure of damages for breach of the Contract was the cost to complete the Project to the extent those costs exceeded the costs that would have been payable to Chasco. In its second issue, Stonehill contends that the district court erred in concluding that the consequential damages provision of the Contract precluded use of an income stream to determine the value of the proposed building. In its third, fourth, and fifth issues, Stonehill contends that the district court improperly excluded the testimony of Brownlow and its experts Hallman and Robinson as to the value of the proposed building. In its sixth and seventh issues, Stonehill contends that the district court erred in sustaining Chasco's objections to evidence of cost to complete construction and in refusing to admit a copy of the Contract.[6]

***Standard of Review***

Stonehill challenges the district court's ruling as to the proper measure of damages. Whether the trial court erred in applying an improper measure of damages is a question of law subject to *de novo* review. *TA Operating Corp. v. Solar Applications Eng'g, Inc.*, 191 S.W.3d 173, 183

---

[6] Appellees argue that, even if the district court erred in the challenged rulings, this Court should affirm because the district court properly granted the motion for directed verdict. *See Prudential Ins. Co. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (standard of review for directed verdicts). They contend that there was no evidence of a valid and enforceable contract between the parties. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992) ("In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook."); *KW Constr. v. Stephens & Sons Concrete Contrs., Inc.*, 165 S.W.3d 874, 883 (Tex. App.—Texarkana 2005, pet. denied) (elements of a "binding" contract). Because we conclude the district court did not err in its determination of the measure of damages and the challenged evidentiary rulings did not probably cause the rendition of an improper judgment on other grounds, we do not address appellees' additional arguments for affirming the district court's judgment. Tex. R. App. P. 47.1.

(Tex. App.—San Antonio 2005, pet. granted); *Matheus v. Sasser*, 164 S.W.3d 453, 458 (Tex. App.—Fort Worth 2005, no pet.).

The measure of damages in this case involves matters of contract construction. When a court concludes that contract language can be given a "certain or definite legal meaning," then the language is not ambiguous, and the court "will construe the contract as a matter of law." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "[A] court interprets a contract by ascertaining the true objective intentions of the parties, based on the contract language." *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) (citing *Coker*, 650 S.W.2d at 393). "Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). A court construes written instruments as a whole in an effort to harmonize and give effect to all the provisions of the instrument so that none will be rendered meaningless. *Id.*; *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 292 (Tex. 2004). No single provision taken alone will be given controlling effect; all the provisions must be considered with reference to the whole instrument. *Khan*, 138 S.W.3d at 292.

Stonehill also challenges evidentiary rulings by the district court. The admission or exclusion of evidence is a matter within the trial court's discretion. *Larson v. Downing*, 197 S.W.3d 303, 304-05 (Tex. 2006); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Larson*, 197 S.W.3d at 304-05; *Alvarado*, 897 S.W.2d at 754. To reverse a judgment based on an error in the admission or exclusion of evidence, an appellate court must conclude that

the error probably resulted in an improper judgment. Tex. R. App. P. 44.1(a)(1); *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). To make this determination, an appellate court reviews the entire record and usually requires the complaining party to demonstrate that the judgment turns on the particular evidence admitted or excluded. *Interstate Northborough*, 66 S.W.3d at 220; *Alvarado*, 897 S.W.2d at 753-54.

***Measure of Damages***

In its first issue, Stonehill contends that the district court erred in concluding that Stonehill's measure of damages under the Contract was its cost to complete the Project to the extent those costs exceeded the costs that would have been payable to Chasco. Stonehill relies on section 13.4.1 of the Contract that provides that contractual "rights and remedies" are in addition to "rights and remedies otherwise imposed or available by law or in equity" to contend that Stonehill was entitled to damages under the "recognized legal standard when there has not been substantial performance, that is, the difference between the value of the building as constructed and its value had it been constructed in accordance with the Construction Contract." Stonehill also contends that section 14.2.4 of the Contract, which provides that Stonehill's measure of damages was its cost to complete the Project that exceeded the costs that would have been payable to Safeco, only applied if Stonehill chose to complete the Project. Appellees respond that, assuming that the Contract is valid and enforceable, the parties agreed to Stonehill's recoverable damages as stated in section 14.2.4 of the Contract.[7]

---

[7] Only for the sake of argument as to the contractual measure of damages, appellees assume that the Contract was valid and enforceable and that the Contract included the "AIA Document

We begin by reviewing the actual language of sections 13.4.1 and 14.2.4. *Dorsett*, 164 S.W.3d at 662. Sections 13.4.1 and 14.2.4 as modified by the parties read:

§ 13.4.1     Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by ~~law.~~ law or in equity or by any other agreement, and any such rights and remedies shall survive the acceptance of the Work and/or any termination of the Contract Documents.

* * *

§ 14.2.4     ~~If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Architect, upon application, and this obligation for payment shall survive termination of the Contract.~~

§ 14.2.4     To the extent the costs of completing Work, including, without limitation, compensation for additional professional services and expenses, exceed those costs which would have been payable to Contractor to complete the Work except for Contractor's default, Contractor shall pay the difference to Owner, and this obligation for payment shall survive termination of the Contract. Such costs incurred by Owner will be determined by the Owner and confirmed by the Architect.

We conclude that the contract provisions at issue are unambiguous and interpret them as a matter of law. *See Coker*, 650 S.W.2d at 393.

---

A201-1997, as modified," which contained the "general conditions" of the Contract, including articles 4, 13, and 14.

Based on the plain language of the contract provisions and the applicable common law measure of damages, we conclude that the district court did not err in its determination of the measure of damages. In the situation where there has been a "complete failure of performance" to construct a building, the common law "recognized" measure of damages for breach of contract is the "'excess of the reasonable and necessary cost of completion over and above the unpaid portion of the contract price.'" *Ashley v. Bizzell*, 694 S.W.2d 349, 353 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) (quoting *Smith v. Kinslow*, 598 S.W.2d 910, 913 (Tex. Civ. App.—Dallas 1980, no writ)); *see also Vance v. My Apartment Steak House, Inc.*, 677 S.W.2d 480, 481-82 (Tex. 1984). The parties' agreed measure of damages in the Contract is consistent with the common law measure of damages for a "complete failure of performance" to build a building. *See Bizzell*, 694 S.W.2d at 353; *see also Fidelity & Deposit Co. v. Stool*, 607 S.W.2d 17, 21 (Tex. Civ. App.—Tyler 1980, no writ) ("The facts and circumstances in each [breach of a building contract] case will determine whether the remedial cost or the difference in value is the proper measure of damages.").

Stonehill's interpretation that section 14.2.4 applies only if Stonehill had chosen to complete the Project ignores the section's plain language as modified by the parties. The plain language does not condition Stonehill's recovery on a requirement that the Project be completed, and courts routinely award costs to complete a construction contract without requiring those costs to be incurred. *See generally Vance*, 677 S.W.2d at 481-82 (measure of damages for owner when contractor is in breach is reasonable cost of completing job or remedying those defects that are remediable). Parties also contractually may agree to the measure of damages in the event of a breach. *See Stool*, 607 S.W.2d at 24 ("[I]t is well established that parties having agreed upon the measure of

14

damages for breach of their contract are accordingly bound."); *Buhler v. McIntire*, 365 S.W.2d 237, 239-40 (Tex. Civ. App.—Austin 1963, writ ref'd n.r.e.) ("The general rule seems to be that parties having agreed upon the measure of damages for breach of their contract are accordingly bound.").

Stonehill's interpretation of section 14.2.4 also is not consistent with the Contract as a whole. *See Dorsett*, 164 S.W.3d at 662. Section 14.2.4 is within Article 14 that is titled "Termination or Suspension of the Contract." Section 14.2 is titled "Termination by the Owner for Cause," and subsection 14.2.4 expressly addresses the owner's remedies when it has terminated for cause. The parties also agreed to waive consequential damages for breach of the Contract by the other party.[8] Stonehill expressly agreed to waive any damages that it incurred for "losses of use, income, [and] profit." Binding the parties to the contractually agreed measure of damages in the event

---

[8] Section 4.3.10 of the Contract addresses claims for consequential damages. It reads in relevant part:

§ 4.3.10     Claims for Consequential Damages. The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes:

1.     damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

2.     damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. . . .

Stonehill terminated for cause is consistent with Stonehill's waiver of the types of damages expressed in the consequential damages clause.

Stonehill's contention that, in any event, section 13.4.1 provides Stonehill additional remedies, including expectancy damages based on the difference-in-value measure of damages, is unpersuasive. Stonehill relies on *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160 (Tex. 1982), to support its position. In *Turner*, the supreme court addressed when the measure of damages for the breach of a construction contract is "remedial damages"—the cost to complete construction—as opposed to the "difference-in-value measure." *Id*. at 164-65. At issue was a dispute between the contractor and the owner after the contractor completed the construction of a sewer line that the owner alleged was defective. *Id*. at 162. In the context of defective work and economic efficiencies, the supreme court explained that the difference-in-value measure is appropriate when the contractor has not substantially complied with the contract between the parties and the remedial measure is appropriate when the contractor has substantially performed. *Id*. at 164-65. In contrast, Chasco had not begun construction on the new building, and Stonehill is not alleging defective work.

On this record, we conclude that the district court did not err in its conclusions as to the contractual measure of damages. The parties' objective intent from the plain language of section 14.2.4 and the Contract as a whole was to agree that Stonehill's measure of damages in the event Chasco defaulted was the cost to complete the Project to the extent those costs exceeded the costs that would have been payable to Chasco. *Breitenfeld*, 167 S.W.3d at 841. We overrule Stonehill's first issue.

16

*Evidence of the Value of the Proposed Building*

In its second issue, Stonehill contends that the district court erred in ruling that the consequential damages section of the Contract precluded the use of an income stream in determining the value of the proposed building. Because we have concluded that the district court did not err in its determination that the measure of damages was the cost to complete the Project that exceeded the costs that would have been payable to Chasco, the value of the proposed building was not relevant to an issue of material fact. *See* Tex. R. Evid. 401. Even if the district court erred in precluding the use of an income stream in determining the value of the proposed building, such error did not probably cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a). We overrule Stonehill's second issue.

In its third, fourth, and fifth issues, Stonehill contends that the district court erred in excluding testimony from its experts Hallman and Robinson and its owner Brownlow as to the value of the proposed building had it been completed in accordance with the plans and specifications.[9] Because we have concluded that the district court did not err in its determination that the measure of damages was the cost to complete the Project that exceeded the costs payable to Chasco, evidence of the value of the proposed building was not relevant to an issue of material fact. *See* Tex. R. Evid. 401. Even if the district court erred in excluding testimony from Stonehill's experts and Brownlow of the value of the proposed building, the exclusion of their testimony did not probably

---

[9] Stonehill contends that the district court erred in striking Hallman because he was not required to be licensed by the TALCB to testify to the value of real property, in excluding Robinson's testimony because Robinson's opinion as to the proposed building's value was based on accepted approaches for appraising real property, and in excluding the testimony of Brownlow as to the proposed building's value because he was an owner of the property.

cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a). We overrule Stonehill's third, fourth, and fifth issues.

### *Evidence of the Cost to Complete Construction*

In its sixth issue, Stonehill contends that, if its measure of damages was the cost to complete the Project that exceeded the costs payable to Chasco, the district court should have allowed Stonehill to introduce evidence of costs. Stonehill contends that Robinson and Brownlow would have testified to the cost to complete the Project to require a jury question on that issue.[10] Appellees respond that the district court properly excluded evidence of the costs to complete the Project because Stonehill failed to timely designate this theory of damages. Stonehill does not dispute that it first disclosed that it would seek the cost to complete the Project that exceeded the costs payable to Chasco as an alternative measure of damages in its fourth amended response to request for disclosure that it served on appellees on February 4, 2008, after the court-ordered deadline of December 28, 2007.

---

[10] At oral argument, Stonehill's counsel argued that the issue of the cost to complete the Project was tried by consent because evidence was admitted during the trial that the cost to complete the Project was in excess of $30,000,000 according to Chasco. *See* Tex. R. Civ. P. 67. To the extent Stonehill attempts to raise a new issue not addressed in its briefing, we decline to address the issue as it has not been preserved for appellate review. *See* Tex. R. App. P. 38 (issues on appeal must be argued in appellant's brief). In any event, Chasco did not consent to the cost to complete the Project as an alternative measure of damages. Chasco specifically sought to exclude evidence under Stonehill's alternative measure of damages, which motion the district court granted, and there was no development of the evidence to prove or disprove the question of the "reasonable and necessary" costs to complete the Project. *See Ashley v. Bizzell*, 694 S.W.2d 349, 353 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) ("Appellant never did establish through the expert witness or any other witness the reasonable and necessary costs of completion over and above the unpaid portion of the contract price.").

Texas Rule of Civil Procedure 193.6 provides for the exclusion of evidence that has not been timely disclosed and the exceptions to exclusion. Tex. R. Civ. P. 193.6.[11] A party that fails to timely disclose evidence may not introduce the evidence unless the party shows that there was good cause for the failure to disclose and that the failure will not unfairly surprise or unfairly prejudice the other party. *See id.* 193.6(a). Rule 193.6 places the burden on the party seeking to introduce the

---

[11] Texas rule of civil procedure 193.6 reads:

(a) *Exclusion of Evidence and Exceptions*. A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:

    (1)    there was good cause for the failure to timely make, amend, or supplement the discovery response; or

    (2)    the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

(b) *Burden of Establishing Exception*. The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness. A finding of good cause or of the lack of unfair surprise or unfair prejudice must be supported by the record.

(c) *Continuance*. Even if the party seeking to introduce the evidence or call the witness fails to carry the burden under paragraph (b), the court may grant a continuance or temporarily postpone the trial to allow a response to be made, amended, or supplemented, and to allow opposing parties to conduct discovery regarding any new information presented by that response.

Tex. R. Civ. P. 193.6.

evidence and allows a trial court to continue a trial setting even if the party seeking to admit evidence fails to carry its burden. *See id.* 193.6(b), (c).

Stonehill has failed to address its burden to show good cause for its failure to disclose that it was seeking its cost to complete the Project as an alternative measure of damages or why there is a lack of unfair prejudice or unfair surprise to appellees. Nor did Stonehill seek a continuance or trial postponement to amend its discovery responses or to allow Chasco to conduct discovery regarding the costs to complete the Project. Stonehill filed this suit in July 2006 and, after Stonehill's initial damages expert was excluded, the district court continued the trial setting and gave Stonehill additional time to designate a new damages expert and to amend its measure of damages, specifically extending the deadline to amend the parties' pleadings and discovery responses "to conform to the revised damages testimony and methodology[ies]." The Contract also expressly addresses the measure of damages in the event Stonehill terminated for cause as the cost to complete the Project to the extent those costs exceed the costs that would have been payable to Chasco. We cannot conclude that the trial court abused its discretion in excluding evidence of the cost to complete the Project for failure to timely disclose. *See Alvarado*, 897 S.W.2d at 754. We overrule Stonehill's sixth issue.

### *Copy of Original Contract*

In its seventh issue, Stonehill contends that the district court erred in refusing to admit its offered version of the Contract even though it was properly authenticated and admissible.

*See* Tex. R. Evid. 1003, 1004.[12] Chasco objected that Stonehill's offered version was not an original and challenged its authenticity. *See id.* 1003. Stonehill's version contained a different GMP addendum from the versions of the Contract that were admitted into evidence, but the parties agreed that the Contract contained the terms that are relevant to the challenged rulings on appeal. Even if the district court erred in excluding Stonehill's version of the Contract, Stonehill has failed to show how this exclusion probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a). We overrule Stonehill's seventh issue.

## CONCLUSION

Because we conclude that the district court did not err in its conclusions as to the measure of damages under the Contract and that any error by the district court in the challenged evidentiary rulings was not reversible error, we affirm the district court's judgment.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: February 11, 2009

---

[12] A duplicate is admissible to the same extent as an original document unless "a question is raised as to the authenticity of the original" or "in the circumstances it would be unfair to admit the duplicate in lieu of the original." Tex. R. Evid. 1003. One circumstance in which an original is not required is if all originals have been lost or destroyed "unless the proponent lost or destroyed them in bad faith." Tex. R. Evid. 1004(a).