TURNER, COLLIE & BRADEN,
INC., Petitioner,

v.

BROOKHOLLOW, INC., et al.,
Respondents.

No. C–738.

Supreme Court of Texas.

July 21, 1982.

Rehearing Denied Dec. 8, 1982.

**162**

Fulbright & Jaworski, Frank G. Jones and Roger Townsend, Houston, for petitioner.

Johnson, Swanson & Barbee, Charles R. Haworth and Charles W. Cunningham, Dallas, for respondents.

RAY, Justice.

This case concerns claims for breach of contract and negligent performance of a contract. It presents, primarily, questions involving the proper measure of damages and the admissibility of certain evidence. Brookhollow, Inc. contracted with Turner, Collie & Braden, Inc. (TCB) for TCB to design and supervise the construction of a sewer line. Brookhollow contracted with Whitelak, Inc. for the actual construction of the line. The completed sewer leaked and Brookhollow refused to pay Whitelak for its work. Whitelak sued Brookhollow who in turn brought in TCB as a third-party defendant. Among other things, the trial court's judgment awarded Brookhollow money damages against TCB on its cross-claim for negligent performance of the engineering services. The court of appeals affirmed a part of the judgment, but reversed and remanded to the trial court the part concerning TCB's liability on Brookhollow's cross-claim. 624 S.W.2d 203. We affirm the court of appeals' reversal of the trial court's judgment against TCB on Brookhollow's cross-claim for negligent performance; we reverse the remainder of the court of appeals' judgment and remand the entire cause to the trial court for a new trial.

## I. The Facts

On January 3, 1972, Brookhollow of Houston, Inc. purchased 454 acres of land in Houston, Texas, for use as a housing development. The tract lay partly in the West Harris County Municipal Utility District No. 1 (MUD 1) and partly in the Harris County Municipal Utility District No. 25 (MUD 25). By agreement with Brookhollow, both MUDs were to own the sewage and sanitary facilities located in their respective districts. Brookhollow entered into a contract with the engineering firm of Turner, Collie & Braden, Inc. (TCB) for TCB to design the development's sewer and drainage facilities. MUD 1 and MUD 25 also contracted for TCB to design the proposed sewage facilities. In addition to designing the sewer line, TCB agreed to supervise its construction.

In December of 1972, TCB submitted to Brookhollow plans and specifications for a gravity flow sewer line, buried twenty to twenty-eight feet in depth, which is below the area water table. Brookhollow then contracted with Whitelak, Inc. for construction of the line in accordance with TCB's plans.

After Whitelak's completion of the sewer but before Brookhollow's final acceptance, numerous leaks and cracks were discovered. Whitelak undertook to repair the line, but its repairs were halted when an abutting landowner alleged the line encroached on his property. Whitelak could not resume repairs until several months later, when the boundary dispute was settled. Shortly thereafter, Whitelak abandoned its repair efforts and demanded that Brookhollow pay for the cost of the extra work. Because of the defects in the sewer line, Brookhollow refused to pay both the balance owing on the original construction and the cost of the extra work. Whitelak contended that it had substantially performed the contract and that the defects were caused by TCB's refusal to allow it to use a construction technique known as Special Section 5. Special Section 5 entails encasing the pipe in timber and then compacting shale and other

material around it. This technique is often used when sewers are buried in sand below the water line. TCB denied liability for the cracks and attributed at least some of the defects to the fact that a portion of the line was left open to the elements during the protracted boundary dispute.

TCB took the position that the cracked pipe could be used if it were sliplined; this would involve lining the concrete pipe with plastic pipe of slightly less diameter. Brookhollow retained another engineering firm, Lockwood, Andrews and Newnam (LAN), to examine the line and make a recommendation as to the most desirable course of action. LAN presented Brookhollow with a written report in which it recommended abandonment of the defective line. Brookhollow followed LAN's advice and constructed a new pump-operated line at a shallower depth. Only thirty-five feet of the original line is now in use.

Whitelak sued Brookhollow, MUD 1 and MUD 25 (hereinafter collectively referred to as "Brookhollow") for breach of contract, asking recovery for the balance owing on the original construction contract ($78,764.99), the cost of the extra work it performed in repairing the line ($184,595.27), interest on those amounts and reasonable attorney's fees. Brookhollow counterclaimed against Whitelak alleging breach of contract, breach of implied warranty and negligence in the construction of the line. Brookhollow sought indemnity from TCB for any amounts it might be found to owe Whitelak. In addition to this claim for indemnity, Brookhollow brought a cross-claim against TCB, alleging breach of contract, breach of implied warranty and negligence in supervising the construction of the line. TCB counterclaimed against Brookhollow for the balance owing on its engineering contract.

At trial, after all parties rested, Whitelak moved for a directed verdict. The trial court granted the motion and rendered an interlocutory judgment awarding Whitelak $36,115.86 (the undisputed amount of unpaid retainage) against Brookhollow. The remainder of the case was submitted to the jury, which found, among other things, that TCB's conduct was the sole cause of the trunk sewer's failure. On the basis of the jury findings, the trial court awarded Whitelak an additional $227,244.40 against Brookhollow. Brookhollow was awarded indemnity of $184,595.27 against TCB, the amount of Brookhollow's liability to Whitelak, less $78,764.99, the amount owed by Brookhollow for the original construction. The trial court awarded Brookhollow an additional $298,472.67 on its cross-claim against TCB.

The court of appeals found harmful error in the trial court's admission of the LAN report into evidence and in the amount of damages the trial court awarded against TCB. Accordingly, it reversed that part of the trial court's judgment which awarded Brookhollow damages on its cross-claim against TCB and remanded that part of the cause to the trial court for a new trial; it affirmed the remaining parts of the judgment. We granted applications for writ of error from both Brookhollow and TCB.

## II. Damages

The trial court submitted the following Special Issue No. 6:

> What amount of money, if any, do you find from a preponderance of the evidence would fairly and reasonably compensate the owners [Brookhollow] for the damages, if any, which they have suffered and probably will suffer in the future as a result of the failure of the trunk sewer to be in operating condition?

a) The reasonable and necessary expenses incurred in investigating the causes of the failure of the trunk sewer? — $34,265.72

b) The reasonable and necessary expenses incurred in securing temporary sewage-removal services by the use of sewage pumping trucks? — $ 7,892.10

c) The reasonable and necessary expenses incurred in designing and constructing a temporary lift station and force main? — $85,060.45

d) The reasonable and necessary engineering expenses incurred in designing a permanent force ma·n? — $11,376.06

e) The present value of the reasonable and necessary expenses that probably will be incurred in the future in constructing a permanent force main? — $80,000.00

f) The present value of the reasonable and necessary expenses that will be incurred in the future in paying for the additional energy costs, if any, attributable to the operation of (a) the temporary force main and lift station that was built as a temporary replacement for the trunk sewer, and (b) the permanent force main & lift station that probably will be built as a permanent replacement for the trunk sewer?   $17,650.80*

*This figure is ten percent of the amount in question. That amount being $176,508.00. [Notation made by the jury.]

These figures total $236,245.13. Disregarding these findings, the trial court rendered judgment in favor of Brookhollow and against TCB for $298,472.67. The court of appeals held that the trial court erred in entering judgment for this amount because it was not conclusively proved and the jury findings do not support such an award. The court of appeals also held that it could not render judgment based on the jury verdict because Special Issue No. 6 inquired into an improper measure of damages.

In *Graves v. Allert & Fuess,* 104 Tex. 614, 142 S.W. 869 (1912), this Court set down the rule that for breach of a construction contract, if the contractor has substantially performed, the owner can recover the cost of completion less the unpaid balance on the contract price. We will refer to this as the remedial measure of damages.

■ A different measure of damages was applied in *Hutson v. Chambless,* 157 Tex. 193, 300 S.W.2d 943 (1957), which concerned an action for defective performance of a construction contract. In *Hutson,* the contractor had deviated from the plans and it was alleged that these deviations could be corrected only by tearing down and reconstructing a large part of the house. The Court quoted with approval the following language from *White v. Mitchell,* 123 Wash. 630, 213 P. 10 (1923):

Where it is necessary, in order to make the building comply with the contract, that the structure, in whole or in material part, must be changed, or there will be damage to parts of the building, or the expense of such repair will be great, then it cannot be said that there has been a substantial performance of the contract. *Generally, where there has not been such substantial performance, the measure of the owner's damage is the difference between the value of the building as constructed and its value had it been constructed in accordance with the contract.* Such a recovery would be just to both parties. It is manifest that to measure the owner's damage by the cost necessary to make the building conform to the contract would often be an injustice, because in many instances such cost would amount to almost as much as the original contract price. (Emphasis added).

*See also, Cooper Concrete Company v. Hendricks,* 386 S.W.2d 221, 223 (Tex.Civ.App.—Dallas 1965, no writ); *County of Tarrant v. Butcher & Sweeney Construction Co.,* 443 S.W.2d 302, 307 (Tex.Civ.App.—Eastland 1969, writ ref'd n.r.e.). We will refer to this as the "difference-in-value" measure. The "difference-in-value" measure, like the remedial measure, must be reduced by any unpaid portion of the contract price. We see no reason why these two rules should not apply to an engineer such as TCB, as well as to a contractor.

■ From the above authority, it is apparent that the remedial measure applies whenever the breaching party has substantially complied with the terms of the contract. Conversely, the difference-in-value measure applies when the contractor has not substantially complied with the contract terms. The Commission of Appeals in *Atkinson v. Jackson Bros.,* 270 S.W. 848, 851 (Tex.Comm'n App.1925, holding approved) wrote:

To constitute substantial compliance the contractor must have in good faith intended to comply with the contract, and shall have substantially done so in the sense that the defects are not pervasive, do not constitute a deviation from the general plan contemplated for the work, and are not so essential that the object of the parties in making the contract and its purpose cannot, without difficulty, be accomplished by remedying them. Such performance permits only such omissions

or deviation from the contract as are inadvertent and unintentional, are not due to bad faith, do not impair the structure as a whole, and are remediable without doing material damage to other parts of the building in tearing down and reconstructing.

Brookhollow contends that Special Issue No. 6 was a proper submission of the remedial measure. There was, however, no jury finding that TCB substantially complied with the contract and, after reviewing the record, we cannot say that substantial compliance was conclusively proved. When the trial court omits one of a cluster of issues necessary to support a ground of recovery, without an objection or request, and there is evidence to support a finding thereon, the trial court will be deemed to have found the issue in such a manner as to support its judgment. Tex.R.Civ.Pro. 279. Although we cannot say TCB proved its substantial compliance as a matter of law, we do find some evidence of substantial compliance. There was no objection to the omission of an issue on substantial compliance and one was not requested. Therefore, under Rule 279, the trial court is deemed to have found that TCB substantially complied with the contract. Because of this deemed finding, the trial court did not commit error in submitting the remedial measure of damages rather than the difference-in-value measure.

While Special Issue No. 6 inquired into the remedial measure of damages, we hold that it was improperly submitted. Subparts (c), (d), (e) and (f) of the issue inquired into the cost of a new sewer. In submitting the issue in this manner, the trial court assumed that the defects could be remedied only by total replacement of the line. TCB objected to the issue on several grounds, one of which was that the issue properly should have been predicated on a jury finding that the line could not be repaired. We agree with TCB. The issue would have been proper had it simply inquired into the cost of remedying the defect. Also, Special Issue No. 6, as submitted, would have been proper had it been predicated on a jury finding that the line could not be repaired for less than the cost of total replacement. Without this threshold finding, Special Issue No. 6 does not inquire into the cost of remedying the defect; it merely inquires into the cost of a new sewer, which may or may not be the cost of remedying the defect.

Because TCB objected to the omission of an issue inquiring whether the line could be repaired, the trial court cannot be deemed to have made such a finding. Neither can we say that Brookhollow proved as a matter of law that the line could not be repaired. TCB adduced evidence that the entire line could be put in working order for $40,000 by sliplining. Although sliplining would reduce the interior diameter of the pipe by four inches, TCB's expert witness testified that the smoother surface of the plastic pipe would reduce friction and enable the sliplined sewer to serve the development as well as an unsliplined concrete sewer of larger diameter. The expert also testified that sliplining would stabilize the concrete pipe and make it less susceptible to cracking.

As noted above, the trial court rendered judgment in favor of Brookhollow and against TCB for $298,472.67. We do not know how the trial court arrived at this figure. It was not the amount of damages found by the jury. Our review of the record convinces us that the court of appeals was correct in holding that this damages figure was not conclusively proved. Brookhollow argues that the trial court arrived at this figure by making a deemed finding based on the difference-in-value measure of damages. We disagree. TCB objected to the omission of an issue based on the difference-in-value measure. Therefore, under Tex.R.Civ.Pro. 279, there can be no deemed finding.

Accordingly, the trial court incorrectly rendered judgment against TCB for $298,-472.67. Because Special Issue No. 6 incorrectly states the remedial measure of damages, we cannot render judgment based on the jury verdict.

*III.  The Propriety of a Partial Remand*

Because of our holding that Special Issue No. 6 was an improper submission of the measure of damages, we must remand for a new trial at least as to Brookhollow's cross-claim against TCB.  However, if we remand only as to Brookhollow's cross-claim against TCB, we would leave intact Whitelak's recovery against Brookhollow and Brookhollow's recovery of indemnity against TCB.  TCB contends that the various claims for damages are so intertwined that one cannot be severed from the others and retried alone.  We agree.

Brookhollow did not appeal the judgment in favor of Whitelak.  As a general rule, when one party appeals from a judgment, a reversal as to him will not justify a reversal as to other nonappealing parties.  This rule does not, however, apply where the respective rights of the appealing and nonappealing parties are so interwoven or dependent on each other as to require a reversal of the entire judgment.  *Lockhart v. A.W. Snyder & Co.,* 139 Tex. 411, 163 S.W.2d 385, 392 (1942).  In such a case, the court must reverse the entire judgment in order to provide the appellant with full and effective relief.  *Saigh v. Monteith,* 147 Tex. 341, 215 S.W.2d 610, 613 (1948).  *See also, Truck Drivers, Chauffeurs, Warehousemen and Helpers, Local No. 941 v. Whitfield Transportation, Inc.,* 154 Tex. 91, 273 S.W.2d 857 (1954); *Kansas University Endowment Association v. King,* 162 Tex. 599, 350 S.W.2d 11 (1961).

TCB's liability to Brookhollow on both the cross-claim and the claim for indemnity and Brookhollow's liability to Whitelak on the construction contract turn on the jury finding that TCB's negligent performance was the sole proximate cause of the sewer's defects.  If we remand only as to Brookhollow's cross-claim against TCB, the result of the second trial could be inconsistent with the result of the first trial.  For example, the jury in the second trial could find that Whitelak, and not TCB, was the sole proximate cause of the defects.  In such a case, TCB, for the same alleged breach, would be exonerated in the second

trial but held liable for indemnity in the first.  A similar result could obtain if we remand as to both Brookhollow's cross-claim and its claim for indemnity, but not as to Whitelak's claim against Brookhollow.  Again, the jury in the second trial could find that Whitelak was the sole cause of the defects.  As a result, Brookhollow would be held liable to Whitelak in the first trial but would be denied indemnity in the second trial.  The possibility of such inconsistent results is intolerable and for this reason the entire judgment must be reversed and the entire cause remanded for a new trial.

In support of the court of appeals remand of only its cross-claim, Brookhollow argues that there is no danger of inconsistent results because the doctrine of collateral estoppel would prevent a retrial of TCB's liability.  Brookhollow argues, in effect, that the issue of damages can be severed and retried alone.  Tex.R.Civ.Pro. 434 provides, among other things, that—

> if it appear to the court that the error affects a part only of the matter in controversy and that such part is clearly separable without unfairness to the parties, the judgment shall only be reversed and a new trial ordered as to that part affected by such error, *provided that a separate trial on unliquidated damages alone shall not be ordered if liability issues are contested.*  (Emphasis added).

TCB contested the issue of its liability on the Brookhollow cross-claim by assigning "no-evidence" and "insufficiency" points in both its appellant's brief and its motion for rehearing.  Thus, Rule 434 prevents the court of appeals from remanding only on the issue of damages.

*IV.  The Admissibility of the LAN Report*

Brookhollow complains of the court of appeals' holding that the LAN report was hearsay and inadmissible, even for a limited purpose.  So the trial court may have guidance in the proper treatment of the report, we hold that it was admissible for the limited purpose for which it was offered.

The report is a forty-page document in which Lockwood, Andrews & Newnam evaluated several different alternatives for getting sewer service to the Brookhollow development. Several of these alternatives involved partial or complete sliplining of the defective sewer line, which had been TCB's recommendation. LAN concluded, however, that Brookhollow's best alternative, in terms of cost and reliability, would be to abandon the defective line and construct a new one. Brookhollow followed this recommendation. The report in no way touched on the cause of the sewer's defects.

■ It is well established that the plaintiff in a breach of contract action can only recover "such damages as he could not have prevented with reasonable exertions and expense." *Walker v. Salt Flat Water Co.,* 128 Tex. 140, 96 S.W.2d 231, 232 (Tex.1936). At trial, Brookhollow introduced the LAN report for the limited purpose of showing that it had acted reasonably in abandoning the line—i.e., that it had met its duty to mitigate damages. TCB objected on grounds the report was hearsay and had not been authenticated. The trial court instructed the jury that evidence introduced for a limited purpose could not be considered for any other purpose.

■ The court of appeals quoted from *McAfee v. Travis Gas Corporation,* 137 Tex. 314, 153 S.W.2d 442 (1941):

Where the question is whether a party has acted prudently, wisely or in good faith, the information on which he acted, whether true or false, is original and material evidence, and not hearsay.

*See also, Texas Employers' Insurance Association v. McDonald,* 238 S.W.2d 817, 820 (Tex.Civ.App.—Austin 1951, writ ref'd). Notwithstanding this rule, the court of appeals held the LAN report inadmissible, stating that "[e]ven though the court admitted [it] for a limited purpose, it encompassed many facets of the case which were in issue and on which appellant was entitled to cross-examine." The court of appeals seemed to imply by this that the jury disregarded its limiting instruction and considered the LAN report for purposes other than to determine whether Brookhollow acted reasonably to mitigate damages. An appellate court must assume that a jury properly followed the trial court's instructions.

■ The LAN report, admitted for the limited purpose of showing that Brookhollow met its duty to mitigate damages, is not hearsay. Evidence of an out-of-court statement is hearsay only if it is being introduced to prove the truth of the matter asserted in the statement. *Hartford Accident & Indemnity Co. v. McCardell,* 369 S.W.2d 331, 337 (Tex.1963). In this case, there was no need for the jury to inquire into the truthfulness of the LAN report; it had only to determine Brookhollow's reasonableness in relying on the report.

■ We also hold that the LAN report was adequately authenticated in light of the limited purpose for which it was admitted. Thomas Martin, Brookhollow's executive vice-president, testified that on TCB's recommendation, they sought out another engineering firm to study the problem. After considering various Houston firms, Brookhollow retained LAN to investigate the situation and recommend the best way to provide the subdivision with sewer service. The admitted report was the one received from LAN and relied on by Brookhollow in making its decision to abandon the line.

Because of our judgment remanding the entire cause to the trial court, we need not consider Brookhollow's and TCB's other points of error.

We affirm the court of appeals' reversal of the trial court's judgment against TCB on Brookhollow's cross-claim for negligent performance; we reverse the remainder of the court of appeals' judgment and remand the entire cause to the trial court for a new trial.