*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



★ ★ ★ ★ ★ ★ ★



# OPINION

No. 04-11-00347-CV

**UNITED STATES FIRE INSURANCE COMPANY**,
Appellant/Cross-Appellee

v.

**THE LYND COMPANY**,
Appellee/Cross-Appellant

v.

**RSUI INDEMNITY COMPANY**,
Cross-Appellee

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-14556
Honorable Janet P. Littlejohn, Judge Presiding[1]

**OPINION ON APPELLEE'S MOTION FOR REHEARING**

Opinion by:    Phylis J. Speedlin, Justice

Sitting:       Catherine Stone, Chief Justice
               Phylis J. Speedlin, Justice
               Rebecca Simmons, Justice

Delivered and Filed:  August 15, 2012

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

---

[1] The Honorable Janet P. Littlejohn, presiding judge of the 150th Judicial District Court, Bexar County, Texas, signed the final judgment.  The Honorable Michael P. Peden, retired, formerly the presiding judge of the 285th Judicial District Court, Bexar County, Texas, signed the partial summary judgment orders that are the subject of this appeal.

The motion for rehearing filed by appellee The Lynd Company is granted. This court's opinion and judgment dated April 25, 2012 are withdrawn, and this opinion and judgment are substituted.

This appeal involves issues arising out of a summary judgment proceeding and a bench trial on damages, statutory interest, and attorney's fees. The key issue on the summary judgment is whether a material fact issue exists as to whether property damage to two apartment complexes in Austin, Texas was caused by one hail storm or two separate hail storms in the spring of 2006. The Lynd Company ("Lynd") sued its primary insurer, U.S. Fire Insurance Co. ("U.S. Fire"), and its excess insurer, RSUI Indemnity Co. ("RSUI"), seeking to obtain insurance proceeds to cover the property damages. Lynd obtained a partial summary judgment on its breach of contract claims against U.S. Fire, and was awarded damages, plus statutory interest under Chapter 542 of the Insurance Code and attorney's fees against U.S. Fire after a bench trial. RSUI obtained a favorable summary judgment that Lynd take nothing on its breach of contract claims against RSUI. U.S. Fire now appeals, challenging the summary judgment as well as the award of statutory interest for violations of Chapter 542 of the Insurance Code.

We conclude the summary judgment evidence raises a material fact issue that precludes Lynd's summary judgment against U.S. Fire on its breach of contract claims; because RSUI's summary judgment is based on the same summary judgment evidence, and is thus dependent on and interwoven with Lynd's summary judgment, we thus reverse the portion of the trial court's final judgment granting summary judgment in favor of Lynd and RSUI and remand for further proceedings. We affirm the portion of the trial court's judgment awarding Lynd statutory interest under Chapter 542 on the $5 million insurance proceeds paid by U.S. Fire in 2007.

### FACTUAL AND PROCEDURAL BACKGROUND

Lynd is the property manager for multiple apartment complexes in San Antonio, Austin and Dallas, Texas. U.S. Fire[2] is the primary insurance carrier for the Lynd properties; its policy was in effect from March 31, 2006 to March 31, 2007, and carried a limit of $5 million per occurrence. Lynd obtained excess insurance coverage for the same period from RSUI, which would be liable for any covered damages in excess of U.S. Fire's $5 million policy limit per occurrence.

In the spring of 2006, a series of wind and hail storms hit the Dallas, Austin, and San Antonio areas. On May 4, 2006, Lynd notified its primary insurer U.S. Fire in writing of its claim for property damage that occurred on May 4, 2006, but stated "not all properties have been accessed – there is possibly additional properties with damage;" Lynd supplemented its notice of claim on May 23, 2006, adding additional properties including the Mandalay and Oak Hollow apartments in Austin that are the subject of this case. U.S. Fire hired an independent adjuster, William Franz of GAB Robins, who commenced an investigation of the property damages at all the Lynd apartment complexes. Franz hired EGP & Associates, an engineering firm, to assist with the inspections, evaluations, and repair estimates.

The excess insurer, RSUI, also hired an independent adjustment firm, Engle Martin & Associates, to assist with its evaluation. David Tusa of Engle Martin prepared a spreadsheet showing the Lynd properties that had sustained hail damage and the potential hail impact of each of the five spring 2006 storms. The spreadsheet showed that Mandalay and Oak Hollow had both been hit by the CAT 71 hail storm between May 1-6, 2006, but had also been hit by the CAT 68 hail storm between April 20-21, 2006. Franz received the Tusa spreadsheet in February 2007, and forwarded it to U.S. Fire with a copy to Michael Lynd, Sr., principal of the insured; in

---

[2] U.S. Fire is also referred to as "Crum & Forster" in the record.

his email, Franz indicated the position taken in the spreadsheet was not his position. Based on his investigation, Franz was of the opinion that the damage to the Mandalay and Oak Hollow apartments was likely caused by the storm that occurred on or about May 4, 2006.

Based on RSUI's position that Mandalay and Oak Hollow had been damaged by more than one hail storm, U.S. Fire interviewed Lynd employees at the properties about how many storms had damaged the apartments. A U.S. Fire investigator, Robert Scott, prepared a March 2, 2007 report which contained several statements by Lynd employees that the May 2006 storm was the storm that caused the hail damage at Oak Hollow and Mandalay.

On May 14, 2007, Michael Lynd, Sr., on behalf of The Lynd Company, signed sworn Proofs of Loss for the Mandalay and Oak Hollow apartments which stated that a hail loss occurred in "May 2006" which was "caused by HAIL CAT 71." U.S. Fire had already paid Lynd $3 million on February 28, 2007, and paid the remaining $2 million toward its $5 million single occurrence limit on June 20, 2007. During that period, Lynd had hired Geofill Material Technologies to repair the damage to the properties. After payment of the $5 million policy limit by U.S. Fire, Lynd still owed Geofill for repairs it had performed on the Oak Hollow and Mandalay properties.

When Lynd sought to recover under RSUI's excess insurance policy, RSUI refused coverage, claiming there was a question as to whether the damage at the Oak Hollow and Mandalay apartments was caused by a single occurrence, i.e., the May 2006 hail storm for which U.S. Fire had paid its policy limits, or also by a second occurrence, i.e., the April 2006 hail storm. RSUI obtained an expert report dated November 5, 2007 from UBS, an engineering firm, which analyzed hail storm tracking data and other scientific weather data and concluded that both Mandalay and Oak Hollow were "likely impacted by a damaging hail event on April 20,

2006;" the report further concluded, however, that Oak Hollow may have also been damaged by a hail event on May 6, 2006. Based on the UBS report, RSUI took the position that 100% of the damage to Mandalay, and 50% of the damage to Oak Hollow, was caused by CAT 68 in April 2006; it ultimately paid Lynd for its share of 50% of the damage at Oak Hollow. When Lynd sought coverage from U.S. Fire for a second storm occurrence in April 2006, U.S. Fire asserted that a single storm, CAT 71 in May 2006, had caused all of the damage to Mandalay and Oak Hollow, and took the position that it had already paid its $5 million policy limit for a single occurrence and owed nothing more.

Lynd sued both insurance carriers on September 24, 2007, alleging breach of contract, violations of Chapter 542 of the Texas Insurance Code, and breach of the duty of good faith and fair dealing. The trial court severed the extra-contractual claims against U.S. Fire and RSUI into a separate cause number. It retained Lynd's breach of contract claims and Chapter 542 claims against U.S. Fire and RSUI in the instant case.

Lynd moved for a traditional partial summary judgment against U.S. Fire on its breach of contract claims related to Mandalay and Oak Hollow. Lynd attached the following evidence to its summary judgment motion:

1. <u>Michael Lynd, Sr. Affidavit</u> – President of The Lynd Company, who states in relevant part that U.S. Fire prepared the Proofs of Loss and requested Lynd to sign them in order to receive payment of the $5 million; copies of the insurance policies and Proofs of Loss are attached to the affidavit.

2. <u>Jack Karam Affidavit (Geofill)</u> – Karam, with thirty years' experience in the construction industry, opines that based on the attached Exhibit B-1 (Franz email with spreadsheet attached) and Exhibit B-2 (UBS engineering report), he agrees with the conclusion reached by UBS.

 <u>Exhibit B-1: William Franz Email with Spreadsheet</u> — The spreadsheet shows that Mandalay and Oak Hollow were hit by both CAT 68 and CAT 71. Karam's affidavit characterizes the spreadsheet as "created by Bill Franz," and as representing Franz's

conclusion that Mandalay and Oak Hollow were damaged by both CAT 68 and 71; Michael Lynd was copied on the email.

Exhibit B-2: Unified Building Sciences (UBS) Expert Report — UBS, an engineering firm, was hired by Engle Martin who RSUI retained to investigate the cause of the Mandalay and Oak Hollow damage. UBS collected and reviewed scientific weather data for the months of April and May 2006, inspected the properties and interviewed Mandalay and Oak Hollow employees as well as managers of other properties in the proximity. UBS concludes that, "Oak Hollow Apartments was likely impacted by a damaging hail event on April 20, 2006; however, we cannot rule out the possibility of additional damages having occurred to the property by a hail event reported on May 6, 2006. Mandalay Apartments was likely impacted by a damaging hail event on April 20, 2006. This location was not likely to have been impacted by a hail event on May 6, 2006."

3. Todd Lipscomb Affidavit (Lynd Attorney) — Attached as Exhibits C-1 and C-2, respectively, are a letter on behalf of RSUI accepting coverage for 50% of the damage to Oak Hollow caused by CAT 68, and a letter by Lipscomb to U.S. Fire's attorney requesting "any reports or information that [U.S. Fire] used in determining that the damage to the subject apartments was caused by the May 2006 hail storm."

U.S. Fire responded, attaching the affidavit of its adjuster, William Franz. In its response, U.S. Fire argued that Lynd had failed to meet its summary judgment burden because the evidence in the record showed a material fact question as to whether the hail damage to Mandalay and Oak Hollow was "caused only by the May 2006 storm or by that and another storm or storms." U.S. Fire expressly incorporated all "pleadings, orders, exhibits, and any and all other summary judgment evidence on file" as part of its response, and attached the following additional evidence:

1. Exhibit A: William (Bill) Franz Affidavit with Schedule 1 — Franz detailed his investigation and stated his conclusion that the Mandalay and Oak Hollow damage was "likely caused by the storm that happened on or about May 4, 2006, and not by another storm." Schedule 1, attached to the affidavit, is Lynd's "First Notice of Incident" stating the date of "May 4, 2006" as the date of the hail damage at Mandalay and Oak Hollow.

2. Exhibit B: John Sudyka Affidavit (U.S. Fire Attorney) — Sudyka states the attached documents, Schedules 1 and 2, were obtained during discovery in the lawsuit:

Schedule 1: Claims Investigator Report by Robert Scott — Scott's assignment was to "take statements from [Lynd] employees in an attempt to nail down the date or

dates of storms in 2005 or 2006." Scott's report concludes that a hailstorm hit Oak Hollow and Mandalay in May 2006; no other storms hit Oak Hollow, but two small hailstorms also hit Mandalay on unknown dates. His report includes the following statements from Lynd employees:

> Oak Hollow: Erick Gomez, head maintenance man, stated that "large hailstones hit the apartment complex in May 2006" and "the May hailstorm was the only storm to hit Oak Hollow." The property manager was hired after May 2006, and had no relevant knowledge.
>
> Mandalay: Lori Bonugli, property manager who was hired in March 2006, stated that "large hail hit the complex the 1st week in May of 2006," and she heard that a second small hailstorm hit the area in 2006 but it did not cause any damage and no report was made. She said the only record of a hailstorm report was the email from Michael Lynd, Sr. on June 21, 2006, in which he states, "as a result of the wind/hail storms in May I hired Geofil to adjust and repair since it was a one occurrence storm." A copy of the June 21, 2006 email from Lynd is attached to Scott's report. In addition, Arthur Luna, head maintenance man, stated it hailed at Mandalay in May, and a couple more times but those were small storms and he did not think a report was made on those.
>
> Schedule 2: Email from Alfredo Lopez to Lynd Property Managers — In a February 27, 2007 email, Lopez informs the Lynd property managers that "your properties are part of the May 2006 Hail Damage Insurance Claim," the "claim in question is for the first part of May," and if they are visited by an insurance investigator, they need to "refer to early May."

In its response, U.S. Fire also objected to Lynd's deficient summary judgment evidence, asserting the Tusa spreadsheet did not establish what Lynd claimed and that RSUI's acceptance of 50% of the Oak Hollow damages was irrelevant. U.S. Fire also asserted that Lynd was "estopped from claiming that any hail damage was attributable to another storm" due to its prior representations to U.S. Fire in the Proofs of Loss that the hail damage was due to a May 2006 storm.

The trial court denied Lynd's summary judgment motion, finding that Franz's affidavit, although "extremely weak," was sufficient to raise a fact issue about which storm had damaged Mandalay and Oak Hollow. After taking Franz's deposition, Lynd moved the court to reconsider its motion for summary judgment based on newly discovered evidence showing several defects

in Franz's affidavit which rendered it incompetent summary judgment evidence. Specifically, Lynd asserted the Franz affidavit was substantively defective because Franz never appeared before a notary, and contained conclusory opinions not based upon Franz's personal knowledge. Lynd asserted that, without the Franz affidavit, the summary judgment evidence conclusively established Lynd's position.

U.S. Fire responded with several arguments in support of Franz's affidavit, and also argued that, even without Franz's affidavit, the other summary judgment evidence was sufficient to preclude summary judgment in favor of Lynd. U.S. Fire stressed the existence of the following in the summary judgment record: (1) Michael Lynd, Sr.'s sworn statements in the Proofs of Loss that the damage to Mandalay and Oak Hollow was caused by CAT 71 and occurred in May 2006; (2) Robert Scott's report reciting the Lynd employees' statements that only the May 2006 storm caused the hail damage at both Mandalay and Oak Hollow; and (3) the internal Lynd emails in which Michael Lynd, Sr. states it was a "one occurrence storm," and Lopez tells the property managers they are part of the "May 2006 Hail Damage Claim." U.S. Fire also attached an additional Lynd email, dated April 25, 2006, to its response; in the email, the Oak Hollow manager reports "no noticeable damage" from the storms of the past few days and notes they are still trying to get coverage from the last hail storm. U.S. Fire argued that all this summary judgment evidence showed the Mandalay and Oak Hollow damage was caused by CAT 71, or at least created a disputed fact issue.

The trial court disagreed, granting Lynd's motion for reconsideration, and then granting a partial summary judgment in favor of Lynd on the issue of U.S. Fire's breach of contract. U.S. Fire filed its own motion to reconsider, which was denied. On November 5, 2010, RSUI

obtained a partial summary judgment in its favor on Lynd's breach of contract and Chapter 542 claims related to the Mandalay and Oak Hollow apartments.

U.S. Fire and Lynd proceeded to a bench trial on the remaining issues of Lynd's claims for statutory interest under Chapter 542, the prompt payment provision of the Texas Insurance Code, and for attorney's fees. At the conclusion of the trial, the court entered judgment awarding Lynd $1,419,338.07 in unpaid insurance proceeds from U.S. Fire, plus 18% interest under Chapter 542 of the Insurance Code on the $5 million paid by U.S. Fire and on the $1,419,338.07 owed by U.S. Fire. The court also awarded Lynd $151,000 in attorney's fees, plus conditional appellate attorney's fees. The trial court signed a final judgment on January 18, 2011, thereby making the partial summary judgments granted in favor of Lynd and RSUI final and appealable.

## DISCUSSION

On appeal, U.S. Fire asserts the trial court erred in granting Lynd a partial summary judgment on its breach of contract claims because there was summary judgment evidence that (i) created a disputed fact issue as to whether the hail damage at Mandalay and Oak Hollow was caused by a single storm in May 2006 as opposed to a separate storm in April 2006, and (ii) established U.S. Fire's affirmative defense of estoppel. U.S. Fire also challenges the trial court's award of 18% statutory interest on the insurance proceeds under the Texas Insurance Code's prompt payment provision, and the award of attorney's fees. We begin by determining whether the trial court erred in granting summary judgment for Lynd on its breach of contract claim against U.S. Fire.

## SUMMARY JUDGMENT ON LIABILITY – BREACH OF CONTRACT

### *Standard of Review*

We review a summary judgment ruling de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A traditional summary judgment is appropriate only when there is no disputed issue of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Tex. Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 252 (Tex. 2002). If the movant succeeds in establishing its right to judgment as a matter of law, the burden then shifts to the non-movant to produce evidence raising a genuine issue of material fact precluding summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). Evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions drawn from all the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755-56 (Tex. 2007) (per curiam); *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). It is not the role of the trial court, at summary judgment, to evaluate the credibility of the affiants or the weight of the summary judgment evidence, but only to determine whether a disputed fact issue exists which should be resolved by the trier of fact. *See State v. Durham*, 860 S.W.2d 63, 66 (Tex. 1993); *see also Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 508 (Tex. App.—Tyler 2008, pet. denied). In reviewing the grant of a traditional summary judgment, we resolve every doubt and indulge every reasonable inference in favor of the non-movant. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (appellate court takes as true all evidence favorable to non–movant); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

*Analysis*

Lynd moved for summary judgment on the ground that the evidence conclusively established that all of the damage to Mandalay and 50% of the damage to Oak Hollow was caused by CAT 68 in April 2006; therefore, U.S. Fire had breached its insurance policy by failing to pay up to the policy limits for the property damage caused by the separate storm in April 2006, i.e., CAT 68. The disputed elements of Lynd's breach of contract claim were whether U.S. Fire was required to pay additional policy benefits for a second storm occurrence, i.e., whether it breached the insurance contract, and what damages resulted from the breach.[3] *See Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 898 (Tex. App.—San Antonio 2002, no pet.). (elements of breach of contract claim are: "(1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach").

In reviewing the court's summary judgment, we must determine whether the evidence in the summary judgment record conclusively established that 100% of the damage to Mandalay and 50% of the damage to Oak Hollow was caused by CAT 68 in April 2006. Our review is limited to the summary judgment evidence in the record at the time the trial court granted the summary judgment. *Young v. Gumfory*, 322 S.W.3d 731, 738 (Tex. App.—Dallas 2010, no pet.). Therefore, although referenced in the parties' briefs, we may not consider Michael Lynd Sr.'s testimony at the subsequent bench trial, any summary judgment evidence that was struck by the trial court, or any late summary judgment evidence for which leave to file was denied. The parties agree that a ruling striking William Franz's affidavit was inherent in the trial court's grant of Lynd's motion for reconsideration because the affidavit's deficiencies were the sole basis of the motion to reconsider; U.S. Fire does not challenge this ruling and does not rely on the Franz

---

[3] The parties do not dispute the dollar amounts at issue.

affidavit on appeal. In addition, after the court granted summary judgment in favor of Lynd, U.S. Fire filed its own motion to reconsider and sought leave to submit additional summary judgment evidence consisting of affidavits from two experts opining that the Mandalay and Oak Hollow damage was caused by a single hail storm or by a storm outside the policy period, and an internal Lynd email discussing the lack of hail damage at Oak Hollow in April 2006. In denying U.S. Fire's motion to reconsider, the trial court also denied leave to file the additional summary judgment evidence. On appeal, U.S. Fire does not challenge the court's denial of leave to file the additional summary judgment evidence. Therefore, we do not consider such evidence in our review of the summary judgment record.

Viewing the summary judgment record in the light most favorable to the non-movant, as we must, we conclude that it contains more than a scintilla of evidence raising a disputed fact issue as to whether Mandalay and Oak Hollow were damaged by CAT 68 in April 2006. We need look no further than the Proofs of Loss for Mandalay and Oak Hollow, which were sworn to by Michael Lynd, Sr. on behalf of The Lynd Company on May 14, 2007. The Proofs of Loss state that the cause of the loss at each property was the hail storm CAT 71, and the date of the loss was May 2006. The Proofs of Loss[4] for Mandalay and Oak Hollow were attached to Lynd's summary judgment motion.

Despite the fact that the Proofs of Loss are part of Lynd's own summary judgment evidence, Lynd raises several arguments as to why the Proofs of Loss constitute "no evidence" or are not competent summary judgment evidence. First, Lynd contends the Proofs of Loss

---

[4] Each "Sworn Statement in Proof of Loss" consists of a printed form with blanks that have been filled in with information specific to the claimed loss. Under the "Time and Origin" section of each Proof of Loss form, the blanks are filled in to state that, "A HAIL loss occurred . . . on the ___ day of MAY yr 06, the cause and origin of the said loss were: HAIL CAT 71." Michael Lynd, Sr.'s notarized signature appears at the bottom of each form, right below the warning, "CAUTION READ BEFORE SIGNING BELOW."

constitute "no evidence" because Franz, the U.S. Fire adjuster, filled out the forms and thus the forms merely repeat Franz's "baseless and conclusory opinion" that the May 2006 storm was the cause of the hail damage at both Mandalay and Oak Hollow. Regardless of who physically typed in the blanks on the one-page forms, when Michael Lynd, Sr. signed the Proofs of Loss he became charged with knowledge of the contents of the forms and the factual statements became his own statements. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 134 (Tex. 2004) (orig. proceeding) (a person is presumed to have read an instrument before signing it, and is charged with knowledge of its contents, absent a showing of fraud). Additions of handwritten or typewritten words in, and deletions from, a printed form show the parties' particular intention and control over pre-printed terms. *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 471-72 (Tex. 2011). By choosing to voluntarily sign his name, Lynd indicated his adoption of the factual information typed in on the Proof of Loss forms as his own statement. *See In re Prudential*, 148 S.W.3d at 134.

The general rule is that any statement, written or oral, made by a party or on his behalf, which is inconsistent with his present position, and any act or conduct of a party from which it may be inferred that facts in issue are not as he now claims, may be introduced in evidence against him as an admission. *Tex. General Indem. Co. v. Scott*, 152 Tex. 1, 253 S.W.2d 651, 655 (1952). The factual statements on the Proofs of Loss thus constitute admissions by Michael Lynd, Sr. on behalf of The Lynd Co., and are competent evidence for summary judgment purposes. *See* TEX. R. EVID. 801(e)(2) (admission by party-opponent is not hearsay and is admissible against the party for truth of the matter asserted); *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007) (any out-of-court statement made by a party-opponent is admissible against that party, subject to exclusion under other rules of evidence); *see*

*also Reid Road Mun. Utility Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 857-58 (Tex. 2011) (summary judgment was not proper where appraisal and damages opinion of certified appraiser was admissible as an adoptive admission by municipal utility district, and thus constituted some evidence precluding summary judgment).

In addition, Lynd swore to the truth of the statements in the Proofs of Loss when he signed them before a notary. *See Shelton v. Swift Motors, Inc.*, 674 S.W.2d 337, 342 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.). Lynd argues on appeal that Michael Lynd, Sr. only swore to one paragraph on the Proof of Loss form entitled "Statements of Insured," which warrants that no fraud has been committed by the insured; he did not swear to all the factual statements filled in on the form. The face of the form contains no language from which such a limitation could be inferred. The "Time and Origin" section of the Proof of Loss form, which is the critical section for purposes of this case, contains the factual details of the date of loss and cause of loss — facts which control application of the policy and which could be susceptible to fraudulent misrepresentation. Further, even if the notarization was indeed limited to the "Statements of Insured" section, as discussed *supra*, Lynd's signature on the form still represents his adoption and affirmation of the facts recited on the Proofs of Loss.

Lynd next asserts that an insured's statements in a proof of loss are not binding; therefore, they are not competent summary judgment evidence. While not conclusive or binding, an insured's statements in a proof of loss are considered "prima facie evidence" of the facts recited, subject to later correction or explanation by the insured. *In re Republic Lloyds*, 104 S.W.3d 354, 359 (Tex. App.—Houston [14th Dist.] 2003, no pet.); 13 COUCH ON INSURANCE § 197:14 (3d ed. 2003) (statements made in a signed proof of loss are not conclusive or binding on the insured as long as they are made in good faith and without an intent to defraud the

insurer).  Bona fide errors and mistakes in a proof of loss may thus be corrected by the insured, unless the insurance company has acted in reliance of the proof of loss in such a manner that correction would be inequitable.  *In re Republic Lloyds*, 104 S.W.3d at 359; *Great Cent. Ins. Co. v. Cook*, 422 S.W.2d 801, 806 (Tex. Civ. App.—Dallas 1967, no writ).  The statements in a proof of loss are entitled to evidentiary weight, and "may be considered prima facie evidence of their truth as against the insured . . ., but not as conclusive proof of the facts therein stated, essentially on the theory that they are an admission against interest of the claimant."  13 COUCH ON INSURANCE § 186:25 (3d ed. 2003).

Finally, Lynd contends that lay testimony, e.g., Michael Lynd, Sr.'s statements in the Proofs of Loss, cannot controvert its scientific evidence, namely the UBS expert report;[5] therefore, in the absence of any scientific evidence from U.S. Fire, Lynd was entitled to summary judgment.  Rule 166a(c) expressly permits summary judgment to be granted on "uncontroverted testimonial evidence of an expert witness," but only on a "subject matter concerning which the trier of fact ***must*** be guided solely by the opinion testimony of experts."  TEX. R. CIV. P. 166a(c) (emphasis added).  Expert testimony is based on "special knowledge, skill, experience, training, or education in a particular subject," while lay testimony concerns "matters based on personal perception and opinions."  *Speedy Stop*, 337 S.W.3d at 850; TEX. R. EVID. 701 (opinion of lay witness), 702 (opinion of expert witness).  Expert testimony assists the trier of fact, and is thus admissible, when the expert's knowledge and experience on a relevant issue are beyond that of the average juror, and the expert testimony helps the jury determine a fact issue or understand the other evidence; however, when the jury is equally competent to form an opinion on the ultimate fact issues, or the expert's testimony is within the jury's common

---

[5] Lynd also refers to the Karam affidavit as scientific evidence, but Karam merely states his agreement with the UBS conclusion.

knowledge, then the expert testimony is not necessary or helpful and should be excluded. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) (per curiam). The question of whether hail fell on a particular location on a particular day, and whether it caused property damage, is not a matter solely within the scope of an expert's knowledge, and thus is not a matter that requires expert testimony; to the contrary, it is a matter of personal observation and common sense that is within the scope of lay testimony.

Lynd relies on *Hall v. Rutherford*, 911 S.W.2d 422, 424 (Tex. App.—San Antonio 1995, writ denied), for the proposition that "when expert testimony is required, lay witness testimony is not competent to controvert an expert's opinion." However, *Hall* is a legal malpractice case in which expert testimony is necessary to establish the standard of skill and care ordinarily exercised by an attorney. *See id.* In some areas such as medical malpractice, expert testimony is necessary to defeat a motion for summary judgment. *See Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007) (general rule in medical malpractice area has long been that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge of jurors).

Proof other than expert testimony will, however, constitute some evidence of causation when a layperson's general experience and common understanding would enable the layperson to determine from the evidence, with reasonable probability, the causal relationship between the event and the condition. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006) (expert testimony is required only when an issue involves matters beyond jurors' common understanding; whether expert testimony is necessary to prove a matter is a question of law). Generally, lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation.

*Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984). Indeed, the Supreme Court has previously considered lay testimony sufficient to support a finding on the causal relationship between a storm and property damage in insurance coverage cases. *See Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 598, 600-01 (Tex. 1993) (lay testimony of property owner and her neighbors that brick veneer and outside staircase of home were undamaged before but visibly damaged after windstorm, along with engineer's opinion that windstorm caused the damage, supported jury's finding that property damage was caused in part by the wind, and therefore homeowner's claim was covered by insurance policy); *U.S. Fidelity & Guar. Co. v. Morgan*, 399 S.W.2d 537, 540 (Tex. 1966) (lay testimony that warehouse was practically destroyed by wind before it was reached by rising water or wave action was sufficient to support jury finding that property was damaged by wind, a covered event, rather than high water, an excluded event under insurance policy).

Here, the material issue is whether the Mandalay and Oak Hollow apartment complexes were damaged by a May 2006 hail storm or by an April 2006 hail storm, or by both — this is an issue of causation within the common knowledge and general experience of a lay person. As argued by U.S. Fire, a lay witness is competent to state based on personal observation and common sense whether hail fell on a particular location on a particular date, and to make a logical connection between the hail event and the property damage existing after the storm; while it may require an expert using scientific data to predict or plot the track of a hail storm or to estimate the dollar value of the property damage, it does not require expert knowledge to say, based on one's personal observation and recollection, whether a hail storm in fact damaged a particular property during a particular time period. Lynd cites no authority establishing that this

type of causation issue must be guided solely by expert evidence.[6] Moreover, Lynd's arguments about the value of its scientific evidence and UBS expert report tend to go to the sufficiency and weight of the evidence, rather than the summary judgment issue of whether there is any evidence raising a disputed issue of fact. *See Durham*, 860 S.W.2d at 66; *Zimmer*, 257 S.W.3d at 508.

Finally, we note that the UBS report and Karam affidavit, the scientific/expert evidence presented by Lynd in support of its summary judgment motion, fail to conclusively establish the material fact that the April 2006 storm (CAT 68) caused "all the damage to Mandalay and 50% of the damage to Oak Hollow" as asserted by Lynd in its summary judgment motion. The UBS conclusion is qualified, stating only that it is "likely" that Mandalay was damaged by a hail event on April 20, 2006, and "not likely" that it was impacted by a hail event on May 6, 2006; as to Oak Hollow, the UBS report concludes it was "likely" damaged by an April 20, 2006 hail event, but states it cannot be ruled out that it was also damaged by a hail event on May 6, 2006. As noted, *supra*, the Karam affidavit merely states that Jack Karam "agrees with" the conclusion in the UBS report. Looking solely at Lynd's summary judgment evidence, we cannot agree that it conclusively established, as a matter of law, that CAT 68 caused all the hail damage to Mandalay, and caused 50% of the hail damage at Oak Hollow.

### *Conclusion*

We conclude the Proofs of Loss constitute more than a scintilla of competent summary judgment evidence and raise a material fact question on whether CAT 68 in April 2006 caused all of the hail damage to Mandalay and 50% of the hail damage to Oak Hollow. Because

---

[6] Lynd cites *Wortham Bros., Inc. v. Haffner* as "the only court to address assessing the effects of hail damage to a building roof conclud[ing] quite recently that expert testimony is required." *See Wortham Bros., Inc. v. Haffner,* 347 S.W.3d 356 (Tex. App.—Eastland 2011, no pet.). However, that case is distinguishable because it held only that expert testimony was required to establish the necessity for a complete roof replacement, and the reasonableness of the replacement costs, due to a negligent roof repair, which the court concluded were matters of specialized and technical knowledge that required expert testimony. *Id.* at 360-61.

reasonable people could differ as to the conclusion to be drawn from the summary judgment evidence, the matter of which storm caused the hail damage at each property was not conclusively established and Lynd was not entitled to summary judgment on its breach of contract claim against U.S. Fire. *See City of Keller*, 168 S.W.3d at 816.

## RSUI SUMMARY JUDGMENT

Lynd filed a notice of conditional cross-appeal stating its position that, if the summary judgment against U.S. Fire is reversed on appeal, then the summary judgment in favor of RSUI must also be reversed because both are based on the same summary judgment evidence and involve intertwined issues; the notice of cross-appeal was filed one day late. *See* TEX. R. APP. P. 26.1(d), 26.3. RSUI filed a motion to dismiss the cross-appeal, which was carried with the direct appeal.

Lynd asserts that if we reverse its summary judgment against U.S. Fire, then we must also reverse RSUI's take-nothing summary judgment because it rests on the same summary judgment evidence and is thus "dependent and interwoven;" therefore, a reversal of one requires reversal of the other in order to avoid inconsistent results. Lynd relies on *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160 (Tex. 1982), in which the court concluded that reversal of the entire judgment and remand of the entire case involving multiple parties and cross-claims was required, rather than only a partial remand on one cross-claim, because the parties' rights were interwoven and dependent on each other and there was a possibility of inconsistent results if there was only a partial remand. *Id.* at 166 (concluding "the various claims for damages are so intertwined that one cannot be severed from the others and retired [sic] alone"). The court stated the general rule that, "when one party appeals from a judgment, a reversal as to him will not justify a reversal as to other nonappealing parties," but also noted the

exception where "the respective rights of the appealing and nonappealing parties are so interwoven or dependent on each other as to require a reversal of the entire judgment." *Id.* (noting that in such a case, the court must reverse the entire judgment in order to provide full and effective relief to the appellant).

The exception recognized and applied in *Turner* applies here because RSUI moved for its summary judgment on the basis of the same evidence used by Lynd in its motion for summary judgment against U.S. Fire; in fact, RSUI merely referenced and incorporated Lynd's summary judgment evidence in its own motion for summary judgment. If we allowed the RSUI summary judgment to stand, but reversed Lynd's summary judgment, we would be giving the same summary judgment record two different legal effects, and thus creating inconsistent legal results. *See id.* The facts underlying the two summary judgment motions are identical, as is the summary judgment evidence. Under these circumstances, we must reverse the summary judgment in favor of RSUI, and remand to the trial court for further proceedings consistent with our opinion. *Id.*

Because Lynd is independently entitled to a reversal of RSUI's judgment for the reasons stated *supra*, the timeliness of Lynd's conditional notice of cross-appeal is not a relevant issue. RSUI's motion to dismiss Lynd's conditional cross-appeal is therefore moot.

### STATUTORY INTEREST UNDER CHAPTER 542 OF INSURANCE CODE

As the trial court's award of statutory interest on the $5 million insurance proceeds paid by U.S. Fire to Lynd in 2007 is a discrete part of the final judgment, independent of the summary judgment portion, we must also consider U.S. Fire's arguments on appeal challenging that portion of the judgment. Specifically, in Paragraph Nos. 4 and 5 of its judgment, the trial court awarded Lynd 18% per annum simple interest on the $3 million and $2 million payments made by U.S. Fire for the May 2006 claim based on its findings that U.S. Fire violated Chapter 542 of

the Insurance Code.[7] U.S. Fire argues the award of statutory interest must be reversed because (1) Lynd did not plead for Chapter 542 statutory interest on the $5 million paid by U.S. Fire, only as to the unpaid insurance proceeds sought by Lynd's breach of contract claim, and (2) there is no evidence to support the trial court's findings that it violated Chapter 542 of the Insurance Code with respect to the May 2006 claim. To recover statutory interest under Chapter 542, an insured must establish three elements: (i) a claim under an insurance policy, (ii) for which the insurer is liable, and (iii) the insurer failed to follow one or more sections of Chapter 542 with respect to the claim. *GuideOne Lloyds Ins. Co. v. First Baptist Church of Bedford*, 268 S.W.3d 822, 830-31 (Tex. App.—Fort Worth 2008, no pet.) (addressing the predecessor statute, article 21.55 of the Insurance Code, which was repealed and re-codified as Chapter 542).

With respect to Lynd's pleadings, its "First Supplemental Original Petition" alleges a separate cause of action against U.S. Fire for violations of Chapter 542's prompt payment provisions. Lynd specifically alleges that U.S. Fire violated section 542.055 by failing to timely request information regarding the claim, violated section 542.056 by failing to timely notify Lynd in writing of its acceptance or rejection of its claim, and violated section 542.058 by failing to timely pay Lynd's claim after receiving the claim information. Lynd alleges, "As a result of these violations, [U.S. Fire] is liable to Plaintiff for the amount of its claim, plus interest at the rate of eighteen percent a year as damages, together with reasonable attorney's fees under section 542.060 of the Texas Insurance Code." U.S. Fire argues that Lynd's pleadings did not provide it with notice that Lynd was seeking statutory interest with regard to the $5 million that U.S. Fire had already paid, as well as on the unpaid insurance proceeds it sought to recover through its

---

[7] The trial court also awarded 18% statutory interest on the $1,419,338.07 in unpaid insurance proceeds it held were owed by U.S. Fire to Lynd pursuant to its breach of contract claim; our reversal of the summary judgment in favor of Lynd on its breach of contract claim also has the effect of reversing the award of statutory interest on the $1,419,338.07.

breach of contract claim. Lynd replies that its petition referred to a total claim amount of $9,595,351.39, and that U.S. Fire was therefore put on notice that it was seeking statutory interest on the total amount of its claim, i.e., the $5 million plus the additional insurance proceeds; further, U.S Fire could have filed special exceptions and did not. We agree that Lynd's pleadings, construed liberally in the absence of special exceptions, gave U.S. Fire fair notice of Lynd's claim for statutory interest on the $5 million paid by U.S. Fire. *See* TEX. R. CIV. P. 45(b), 47, 90, 91; *see also Tex. Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 230 (Tex. 2004); *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896-97 (Tex. 2000) (citing *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993)). Further, the record indicates that U.S. Fire was aware that one of the issues to be resolved at the bench trial was the amount of penalty interest owed on the $5 million in payments made by U.S. Fire. We conclude U.S. Fire had fair notice of Lynd's claim for statutory interest on the $5 million payment.

Turning to the sufficiency of the evidence of a Chapter 542 violation, at the conclusion of the bench trial the trial court made the following findings on the record: (1) that Lynd was required to and did give notice of claims on May 5, 2006 and May 23, 2006; (2) that U.S. Fire did not deny receipt of the claim, and by its adjuster's conduct acknowledged receipt of the claim; (3) it is disputed whether Lynd received a request for additional information either on May 14, 2006, or on December 6, 2007, but there is no evidence that any requested additional information was not sent by Lynd; (4) U.S. Fire did not accept or reject the claim timely, although payment could be a presumption of acceptance of the claim; (5) there is no evidence of a 45-day extension[8] for U.S. Fire to accept or reject the claim; and (6) a dispute arose among the insurance carriers as to whether the claim arose from one occurrence in May 2006, or two

---

[8] *See* TEX. INS. CODE ANN. § 542.056(d) (West 2009) (insurer may obtain a 45-day extension of time for acceptance or rejection of claim upon notice to claimant that it is unable to accept or reject the claim within the statutory deadline).

occurrences in April and May 2006, and, because of the dispute, U.S. Fire did not meet the deadline to pay the claim. The trial court initially stated it was not awarding statutory interest on the $5 million in payments, but at a later hearing on a motion to enter judgment the court stated that was an incorrect application of the statute, and did award statutory interest on the $5 million in payments made by U.S. Fire in 2007. Finally, the court found the statutory interest begins to run on November 15, 2006, which was the deadline for payment based on October 25, 2006 as the date by which U.S. Fire had sufficient information to pay the claim.

Under section 542.056 of the Insurance Code, an insurer is required to provide written notice to a claimant of its acceptance or rejection of a claim within 15 business days after the date the insurer receives "all items, statements, and forms required by the insurer to secure final proof of loss." TEX. INS. CODE ANN. § 542.056 (West 2009). In addition, an insurer violates section 542.058 of the Insurance Code when "after receiving all items, statements, and forms reasonably requested and required under Section 542.055, [it] delays payment of the claim for a period exceeding the period specified by other applicable statutes, or, if other statutes do not specify a period, for more than sixty days . . . ." TEX. INS. CODE ANN. § 542.058(a) (West Supp. 2011); *id.* § 542.055 (West 2009) (providing that, within 15 days after an insurer receives notice of a claim, the insurer shall "(1) acknowledge receipt of the claim; (2) commence any investigation of the claim; and (3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant."). An insurer who is liable for a claim and who violates a provision of Chapter 542 must pay, in addition to the amount of the claim, 18% interest per year on the amount of the claim as damages, together with reasonable attorney's fees. *Id.* § 542.060 (West 2009). Therefore, any violation of Chapter 542 by U.S. Fire triggers the statutory interest penalty.

Here, the trial court found that U.S. Fire violated Chapter 542 with respect to the May 2006 claim because it failed to timely notify Lynd of its acceptance or rejection of its claim and failed to meet the November 15, 2006 deadline to pay the claim; based on these findings, the court awarded 18% penalty interest on the $3 million and $2 million payments on the May 2006 claim. U.S. Fire argues that because there was evidence that Lynd requested separate payments for each individual property rather than one lump sum payment in December 2006, and did not provide the information for the allocation until February 2007, the trial court's finding that U.S. Fire had all the information it needed by October 25, 2006 is not supported by any evidence; therefore, the court's findings that U.S. Fire failed to meet the deadlines for acceptance/rejection of the claim and for payment of the claim is not supported by any evidence. However, the trial court noted on the record at the January 10, 2011 hearing that U.S. Fire's payment was already delayed at the time Lynd requested separate payments for each property based on the trial court's finding that the payment was due by November 15, 2006. The evidence showed that Lynd first requested separate payments for each property in December 2006; U.S. Fire agrees the evidence on this fact is undisputed. Lynd's request for separate payments in December 2006 does not excuse U.S. Fire's failure to accept/reject the claim and to pay the claim by the earlier November 2006 deadlines. Further, the trial court's finding that U.S. Fire had all the requested and required information under section 542.055 by October 25, 2006 is supported by more than a scintilla of evidence showing that Franz had determined that the May 2006 storm caused hail damage at Lynd's properties and that the estimates for the damages exceeded the $5 million policy limit, thereby making U.S. Fire liable to pay the policy limit. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) (legal sufficiency standard of review). We conclude there is legally sufficient evidence to support the trial court's findings that U.S. Fire violated Chapter 542 with

respect to the May 2006 claim, and that it is liable for 18% statutory interest on the $3 million and $2 million payments made on that claim. Accordingly, we overrule U.S. Fire's issue challenging the award of statutory interest, and affirm that portion of the judgment.

## CONCLUSION

Based on the foregoing reasons, we conclude Lynd's summary judgment against U.S. Fire, and RSUI's summary judgment against Lynd, on Lynd's breach of contract claims related to Mandalay and Oak Hollow must be reversed, and such claims must be remanded to the trial court for further proceedings consistent with this opinion. Because the award of statutory interest under Chapter 542 on the $5 million payment by U.S. Fire is a discrete part of the judgment, we affirm that portion of the judgment awarding 18% per annum simple interest on the $3,000,000 and $2,000,000 payments made by U.S. Fire with respect to the May 2006 claim. Lynd is also entitled to post-judgment interest on the award of Chapter 542 interest. Finally, RSUI's motion to dismiss Lynd's conditional cross-appeal is MOOT.

Phylis J. Speedlin, Justice